McLINN, Respondent, v. NOLL, Appellant.

(274 N. W. 833)

(File No. 8028. Opinion filed September 1, 1937)

As Modified on Denial of Rehearing October 6, 1937.

*James R. Bandy,* of Armour, for Appellant.
*F. B. Morgan,* of Wagner, for Respondent.

SMITH, J. On the evening of the 22d day of November, 1933, while walking along the public sidewalk in front of the premises of defendant, plaintiff was tripped by a wire and suffered a broken wrist and other injuries. Thereafter she brought this action, alleging that defendant had constructed a single wire fence across the front of his premises running parallel with the public sidewalk; that thereafter he permitted the said wire to become loose and to remain in an unrepaired condition for a long period; that said wire did remain in an unrepaired condition for a sufficient length of time prior to the event as to require the repair thereof on the part of the defendant in the exercise of reasonable diligence; and that as a result of the negligence on the part of defendant to repair the wire, a part thereof became broken, extended upon the sidewalk, and tripped the plaintiff to her damage. At the close of the testimony, the defendant moved for a directed verdict upon the theory that the evidence was wholly insufficient to establish the alleged negligence of defendant. The motion was denied, and the jury returned a verdict for the plaintiff for the sum of $750. Thereafter, the defendant moved for judgment notwithstanding the verdict, and for a new trial. Both motions were denied, and the matter is brought here for review under assignments questioning the sufficiency of the evidence to support the rulings of the court and the verdict of the jury.

 Did the court err in overruling the motion for a directed verdict? Manifestly, plaintiff must by proof connect her injury with the specific charge of negligence contained in her complaint. Wright v. Sioux Falls Traction System, 28 S. D. 379, 133 N. W. 696. In determining the sufficiency of plaintiff's proof, we assume that the evidence of the plaintiff is true, and draw all permissible inferences from that evidence favorable to plaintiff. Clinkscales v. Wisconsin Granite Company, 38 S. D. 205, 160 N. W. 843.

 At the outset, we dispose of the contention of plaintiff that negligence may be inferred from the circumstances by the application of the doctrine of res ipsa loquitur. It is elementary that such doctrine can have no application unless the facts of the particular case reveal such an accident as does not commonly occur, except as the result of negligence of a defendant having the exclusive management of the offending instrumentality. Common experience teaches that strands of wire do become suddenly broken through the operation of diverse outside forces having no relation to the conduct of the owner of the fence in which they are placed. In such an instance, no obligation rests upon defendant until he gains actual knowledge of the condition, or until the lapse of time requires repair in the exercise of ordinary care for the protection of others in the management of his property. He is not an insurer against injury. 25 C. J. p. 1040, § 51. Obviously, the wire involved in the instant case could have broken, and the unfortunate accident could have occurred, within a period of time all too short to have given rise to any duty on the part of the defendant. It does not logically follow, from proof of plaintiff's injury through the instrumentality of the broken wire, that the duty to repair had arisen. According to the common experience of men, the thing does not speak for itself.

The defendant is the owner of a residence property in Geddes, S. D., located on the southeast corner of a block. The house faces east, and a cement public sidewalk extends along the entire east frontage of the property. Another cement sidewalk connects the public walk with the house at a point approximately 38 feet north of the southeast corner. There is no cement walk along the south side of the property, and the public traveled along that side of the

property over a path. At the intersection of the path along the south side of the property and the public sidewalk along the east side of the property, a tree is located just inside the walk. Another tree is located just inside the walk at the intersection of the public walk along the east side of the property and the walk leading into the house. At some time prior to the accident, the defendant constructed the fence in question by erecting small ornamental posts between the above-described trees, and in a line therewith, and extended it on around the south side of the property along the path as above described, by the use of similar posts. Another post was placed along the sidewalk leading into the house, and wire was extended up to the house over this post from the tree at the intersection of the walk with the public walk. This fence was located a foot or a foot and a half from the sidewalk, and was variously described as from a foot to three feet high.

On the night in question, the plaintiff and her daughter were walking along the public sidewalk from the north to the south, after dark. Plaintiff was walking along the inside of the walk a foot or so from the edge, and caught her ankle in a loop of wire which threw her to the ground, inflicting the injuries of which she complains. In describing the wire which tripped her, plaintiff testified: "It was fastened on one end somewhere. I didn't see where it was fastened. * * * I don't know whether this wire was attached to those trees and those posts or not."

In answer to the question, "Could you tell from what you saw as to whether or not that wire was the wire that was serving as this fence?" she answered, "It was not. I don't know what wire it was I fell over."

From the testimony of the daughter, however, we infer that the wire which tripped plaintiff was formerly a part of the fence. The daughter states that her mother's head was almost opposite the southeast corner tree after she had fallen, and that she disengaged the wire from her mother's foot and threw it back into the yard. She stated: "It was fastened to that post that my mother has testified was down toward the tree. * * * It was fastened to that center post, it was hanging there." The daughter further testified, however, that she used this sidewalk for her convenience in going to and from town each day; that she traversed it in go-

ing down town in the morning, home at noon, down town again at noon, and back at night. The testimony is subject to the inference that she so used the walk on the day in question. She gave testimony as to the manner of construction of the fence, but gave no testimony permitting the inference that she had ever seen the fence in a condition of disrepair except at the moment when she threw the loosened wire back into the lot.

A Jonas Osberg was called by plaintiff and testified to a broken wire he saw on the sidewalk during the daylight of the same evening, as he was delivering milk. However, it is clear from his testimony that the piece of wire to which he made reference was along the sidewalk leading into the house, a distance of over 30 feet from the place of the accident, and that it was insulated wire, while the wire which tripped plaintiff is identified and described as smooth wire. The plaintiff's daughter said in the course of her testimony: "Mr. Osberg evidently saw a different wire from what I did. * * *"

This witness Osberg, however, stated: "I go by his place four times a day every day in the year and sometimes oftener. I deliver milk with a little wagon or a sled that I pull and I use the sidewalk by Mr. Noll's place."

This witness, however, gave no testimony with reference to the disrepair of the fence, except as hereinbefore set forth.

A James O'Conner was called as a witness for the plaintiff, and testified that he had been tripped by a wire in the vicinity of the southeast corner tree. It is apparent from his testimony, however, that he fixed the time of his observation of the condition of the fence after the time of the accident suffered by plaintiff. He said: "I remember hearing that Mrs. McLinn had received an injury about two or three days after it happened. I was coming home from town and made some observations about that time." Further, he stated: "Before I heard about the accident or didn't know about it, that wire was there for I had reasons to remember it for I got a good tumble myself." The wire about which this witness was testifying extended from the southeast corner tree to the first post along the south side on the west.

A Mrs. Johnson gave testimony for the plaintiff, but her testimony was confined to the existence of a loose wire in the neigh-

borhood of the southeast tree a day or so after the accident. She testified that she picked such a wire up as she talked to Mrs. Noll, and that it was a long wire hanging loose just fastened to the tree.

■■ Numerous other witnesses testified in the case, but the foregoing constitutes all of the testimony directly or circumstantially bearing upon the inquiry we pursue. But one conclusion can follow from an examination of this testimony, namely, that plaintiff utterly and wholly failed to connect her injury with the specific act of negligence charged in her complaint. For aught that is shown by the proof, the fence along the public walk may have been in perfect condition and the offending wire may have found its way to the sidewalk after dark on the very night of the accident, all through a force wholly disconnected from any act by the defendant or his servants. As much as the injuries to plaintiff are to be deplored, responsibility therefor may not be placed upon the shoulders of the defendant without proof that he failed in the discharge of some duty to plaintiff.

The order and judgment of the learned trial court denying a new trial are hereby reversed.

RUDOLPH, P. J., and POLLEY and ROBERTS, JJ., concur.
WARREN, J., concurs in result.