HENRICHS, Respondent v. INTER CITY BUS LINES, Appellant

(111 N.W.2d 327)

(File No. 9891. Opinion filed October 23, 1961)

**Martens, Goldsmith, May & Porter,** Pierre, for Defendant and Appellant.

**Stephens, Riter & Mayer,** Pierre, for Plaintiff and Respondent.

RENTTO, J. This action seeks to recover damages claimed to have been suffered by plaintiff when the heating system of a bus operated by defendant in which she was a paying passenger ceased to operate in sub-zero weather. The jury awarded her $7,068 for which judgment was entered. The bus company appeals from the judgment and the order denying it a new trial.

About 2:30 a.m. on January 5, 1959, plaintiff and her nine-year-old daughter boarded defendant's bus at Presho, South Dakota, to go to Norfolk, Nebraska, to attend the funeral of a relative. The weather was clear and dry but the outside temperature was about twenty degrees below zero. She testified that the bus was cold when she got on and that it did not warm up as it proceeded east on U. S. Highway 16. About 1½ miles east of Lyman its engine stopped running causing the heaters to fail. The driver and a companion tried to restart the engine but their efforts were not successful. A couple of the passengers walked to Lyman and returned with a trucker who pushed the bus to Chamberlain arriving there some two to three hours after it stalled. While being pushed the heating system of the bus did not function.

Plaintiff claims that the failure of the heating system was due to the negligence of the bus company and that her feet and the lower portion of her legs were frozen causing her great suffering and permanent injury. The bus company denied that it was negligent and claimed

that plaintiff's own negligence contributed to her injury and took the position that the suffering of which she complained was due to her existing varicosities rather than any lack of care on its part.

The bus was powered by a Cummins diesel engine located in the rear of the vehicle. It operated on a fuel known as Mobile Diesel Fuel, considered to be a premium grade. For winter use it is made lighter to "take care of the cooler temperatures". It is in general winter use by diesel engine motor carriers in northern Minnesota, North and South Dakota without any reports of difficulty encountered in its use. When the outside temperature is extremely cold diesel fuel will congeal and when that happens it does not flow freely in the fuel lines. In addition under some conditions condensation causes water to collect in the fuel tank which, if it freezes, will interrupt the flow of fuel to the engine. In cold weather a compound known as "Heet" is added to the fuel to prevent this but it does not affect its congealing. On the fuel line is a filter, apparently near the engine, to separate the water from the fuel and trap it. The pump draws the fuel from the tank and forces it through the filter and into the engine under pressure.

The driver of the bus testified that the heaters were all working before it stalled and that the bus operated normally in all respects until then. At that time it "cut out like it wasn't getting fuel." He put two cans of Heet in the fuel tank and tried to start the motor with ether. The motor started but ran only a short time before cutting out again. Earlier on the trip he had put in three cans at Wall. This was a regular practice during cold weather.

Another of defendant's bus drivers was on the bus but not on duty. He was merely riding it or "cushioning", as he termed it, going from Rapid City to Mitchell. He assisted the driver in trying to get the motor started at the place of stalling and in Chamberlain. He said that a frozen fuel line, which is not unheard of in motor vehicles, was the cause of the stalling and after that the heaters froze. In

Chamberlain they took off that portion of the fuel line which runs from the filter to the pump but found no evidence of anything frozen.

He further testified that to avoid freezing in the fuel line these vehicles always carry Heet and ether to be used in restarting the motor. When they left Rapid City they had three cans of Heet. Two of these cans were used at Wall so they had only one left when they stalled. After that they got about a dozen cans from the trucker who pushed them into Chamberlain. He indicated that one can should have been put in the fuel tank at Presho and that if such had been done that he would have expected the fuel line to continue working. He was unable to state as to when Heet would customarily be added to the fuel tank in cold weather operation of the bus between Rapid City and Mitchell. On later examination of the bus by the defendant's shop foreman no water or foreign substance was found in the filter or any defect in the fuel line or system.

The Rapid City manager for Cummins diesel, in answer to a hypothethical question, testified that this bus stalled because the fuel had congealed due to the extremely cold weather. He also testified as to condensation causing water to collect in the fuel tank and said that if there was water in the fuel it would go through to the filter and could be seen in it when it is disassembled, either as ice or water depending on the temperature. He stated that if there was water in the filter at the point of stalling that it would remain there until it is drained out. He expressed the opinion that because there was no water in the filter when it was disassembled that the stalling of the bus was not due to the presence of water in the fuel. In his 17 years in the diesel engine business he had heard of diesel fuel congealing in the winter time "more or less" a few times every winter but it was getting rarer because of continuing improvement in diesel fuels. The record does not indicate anything that can be done to protect against this. He also admitted that a line conducting diesel fuel, if it

gets cold enough, can freeze the same as a line carrying gasoline.

In submitting the case the court told the jury that the doctrine of res ipsa loquitur applied. In its Instruction No. 11 it said:

> "From the happening of the accident or the breakdown of the bus involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff, if you find that she was actually injured as a result thereof. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, exercise the utmost care and diligence or that the accident occurred without being proximately caused by any failure [of] duty on its part."

The bus company excepted to the giving of this instruction and claimed that it was not proper in this case because the precise cause of the accident appears in the evidence and made the further objection that whether the doctrine applied was a fact question to be determined by the jury and not a matter of law for the court.

In support of the first ground the bus company relies on Anderson v. Chicago & N.W. Ry. Co., 59 S.D. 543, 241 N.W. 516. In that case this court approved the general rule that if the precise cause of the accident is shown obviously the doctrine of res ipsa loquitur is not available. However, in this case the precise cause of the accident does not appear. While it is clear that the heating system failed because the engine was not getting fuel, conflicting conclusions can be drawn as to why its fuel supply failed. In

other words, we know what happened but not why. This is in dispute. See Annotation 33 A.L.R.2d 791.

One of the foundational requirements which must appear before the doctrine is available is that "the occurrence is such as in the ordinary course of events does not happen if due care has been exercised,". Barger v. Chelpon, 60 S.D. 66, 243 N.W. 97, 98; McLinn v. Noll, 65 S.D. 440, 274 N.W. 833. See also Midwest Oil Co. v. City of Aberdeen, 69 S.D. 343, 10 N.W.2d 701. Dean Prosser states this principle thus, "Its first requirement is a basis of past experience which will permit the triers of fact to conclude that such events do not ordinarily happen unless someone has been negligent." 37 Cal.Law Rev. 183. He goes on to indicate that this basis of experience may be found in that which is common to the community or brought out in the evidence.

██ ██ In telling the jury that the doctrine applied to this case the trial court determined as a matter of law that an occurrence such as this does not ordinarily happen unless someone has been negligent. In so doing we think the court committed error to the prejudice of the defendant. In Kite v. Coastal Oil Co., 162 Cal.App.2d 336, 328 P.2d 45, 51, it is written:

"It is only where there is no issue of fact as to the existence of any of these conditions that the court may, as the court did here, direct the jury to draw the inference."

On this record differing conclusions could reasonably be drawn as to whether this occurrence was one that ordinarily does not happen in the absence of someone's negligence. It seems to us that whether this requirement satisfactorily appears is a question of fact which should have been submitted to the jury.

While this disposes of the appeal we think it proper to record our views on other matters complained of which are likely to arise on a retrial. Instruction #11 is ob-

viously copied from Instruction 206B of Cal.Jury Instructions—Civil. In the Kite case the California court had this to say about another of its features:

> "The instruction given is erroneous in a further particular, for by it the jury were told that if the inference alone, or with other evidence preponderated over evidence to the contrary, it **warranted a verdict** for the plaintiff. It thus ignored the defense of contributory negligence and there was ample evidence to support this defense. By the instruction the jury should have been told that if the inference alone or with other evidence preponderated over evidence to the contrary it warranted a finding that the defendant was negligent."

In the 1959 Supp. to the above publication this instruction is replaced by Instruction 206 with the note that it was designed to meet the objections of the Kite case.

■ In its instruction on the duty of the bus company the court said:

> "As a common carrier or carrier of persons for reward the defendant was required by law to use the utmost care and diligence and a reasonable degree of skill and provide everything necessary for the safe carriage of the plaintiff."

This is the substance of SDC 8.0202. It elaborated on this as follows:

> "The defendant, however, was not an insurer of the safety of the plaintiff; that is to say, it did not warrant such safety in the sense of a guarantee. Its responsibility was not to use the most effective methods for safety that the human mind can imagine, nor that the best scientific skill might suggest. The care required of it, however, was the highest that reasonably could have been exercised consistently with the mode of transportation used, and the practical operation of its business as a

carrier. This requirement must be measured in the light of the best precautions that were in common, practical use in the same business and proved to be efficient, at the time of the accident."

We think this a correct statement of the defendant's duty. California, which has the same statute, has approved this additional statement. Taylor v. Luxor Cab Co., 112 Cal.-App.2d 46, 246 P.2d 45 and Gerfers v. San Diego Transit System, 126 Cal.App.2d 733, 272 P.2d 930. In fact it appears as Instruction 204D of their book of approved jury instructions. The jurors were also advised of the provisions of SDC 8.0205 concerning the treatment of passengers.

In addition to the above statements the instruction as to defendant's duty included the language of SDC 8.0203, which provides that:

"**Safe vehicles required.** A carrier of persons for reward must provide vehicles safe and fit for the purpose and is not excused for default in this respect by any degree of care."

This section is not applicable to the situation here involved. In our view it concerns only the vehicle itself and not its operation. Otherwise SDC 8.0202 would be rendered meaningless. This view is supported by Alden v. New York Cent. R. Co., 26 N.Y. 102, 82 Am.Dec. 401, cited in the note to section 1094 of the proposed Field Code of 1865 from whence our statute was taken. See also Southwestern Greyhound Lines v. Smith, Okl., 277 P.2d 157.

The record clearly establishes that plaintiff because of her varicosities was more susceptible to cold than a person in ordinary good health. From this premise the bus company argues that it was under no duty to anticipate her condition and was obligated to heat the bus only to such degree that a person in ordinary good health would be reasonably comfortable. Instructions were requested embodying this view and refused. The other instructions of the court did not mention this rule.

■ The bus company's view was well taken but its proposals were not a full statement of the rule. It is set out in 10 Am.Jur., Carriers, § 1340 as follows:

> **Duty to Sick Passengers.** A carrier is not required to meet the special and extraordinary care in the .way of heat which one weakened or wasted from sickness or disease might require, but is only required to prepare for the travel of the ordinary person, who is unafflicted with extraordinary conditions, although the mere fact that a passenger is in a weakened condition would not prevent a recovery for injury as a consequence of the car being improperly heated, providing there is not sufficient heat for a person in ordinary health.

See also 13 C.J.S. Carriers § 744; 33 A.L.R. 172. In Owen v. Rochester-Penfield Bus Co., 304 N.Y. 457, 108 N.E.2d 606, 33 A.L.R.2d 1354, this matter did not become an issue. However, since the bus company's own evidence was to the effect that the bus was without heat for a period of two to three hours and that the outside temperature was about twenty degrees below zero, we think it must be said that a person of ordinary good health might have been affected by the cold. Silver v. New York Cent. R. Co., 329 Mass. 14, 105 N.E.2d 923. Consequently, plaintiff's susceptibility would not prevent her from recovering for her injuries.

■ The bus company's defense of contributory negligence is based on several factual claims. First, that plaintiff after experiencing cold in the bus did not leave it at Kennebec, before it stalled, where she could have taken a room at a hotel and after the bus stalled she did not transfer to the warm cab of the truck which pushed the bus to Chamberlain. Second, that with knowledge of the severe cold she wore inadequate clothing. Third, that she took off her coat and used it to protect her daughter from the cold. Fourth, that she made no effort to obtain medical aid at Chamberlain or at the end of her journey. It urges that this conduct makes her guilty of contributory negligence more

than slight as a matter of law. With this we do not agree. Taylor v. Wabash R. Co., Mo., 38 S.W. 304, 42 L.R.A. 110. In these circumstances the question of her contributory negligence and its comparative extent was for the jury.

█ In preparing for her journey she was not required to anticipate that the heating system on the bus would fail. Wiggins v. Pay's Art Store, 47 S.D. 443, 199 N.W. 122. The standard of conduct to which she should conform for her own protection is that to which a reasonable person would conform under like circumstances. The jury were sufficiently advised of her duty in this regard by the instructions given concerning negligence and contributory negligence. Consequently, the court was not required to give the instructions on this matter requested by the bus company.

Among its 32 requested instructions the bus company included one as follows:

> "The mere fact that an accident happened, considered alone, does not prove that it was caused by the negligence of anyone."

In addition it also requested the following on the same proposition, without indicating which it preferred:

> "The mere fact that an accident happened, considered alone, does not give rise to a legal inference that it was caused by negligence or that any party to this action was negligent."

The first statement is the language of Instruction 131 (Revised) of the approved California instructions, while the latter is taken from its Instruction 131.1, which was superseded by 131 (Revised). Both requests were refused and the instructions given did not contain any reference to this rule.

█ When the res ipsa loquitur doctrine is applied the jury are told that from the happening of the accident an inference of negligence is warranted. If at the same time an instruction of the type requested is given, there is danger

of causing confusion and misunderstanding because of the apparent contradiction. This precise question has troubled the California courts on many recent occasions. See cases referred to in Shaw v. Pacific Greyhound Lines, 50 Cal. 2d 153, 323 P.2d 391 and Guerra v. Handlery Hotels, Inc., 53 Cal.2d 266, 1 Cal. Rptr. 330, 333, 347 P.2d 674. In the later case it is said:

> "While it may be possible to give a technically correct explanation of the relationship between the instruction and the doctrine, it is difficult as a practical matter to formulate an explanation which will assure that there will be no confusion on the part of the jurors who, without legal training, are called upon to understand and apply a number of other complex instructions."

We concur in the California court's observation that the use of the words "mere" and "considered alone" does not eliminate the danger of confusion and misunderstanding.

■ It also complains of the court's refusal to give its requested unavoidable accident instruction. The diversity and conflict of adjudications concerning this rule of law in the field of motor vehicle cases is borne out by the extensive annotation in 65 A.L.R.2d at pages 20 to 138. Apparently the posture in which the matter is presented weighs heavily in the result arrived at. On page 136 it is written:

> "In most jurisdictions it is not ordinarily reversible error to refuse or fail to give an 'unavoidable accident, or an equivalent accident instruction, since the substance of any such instruction is usually covered by other instructions given, especially those on negligence, proximate cause, and burden of proof."

We think this observation even more applicable here since the last phrase of the res ipsa loquitur instruction states the essence of the unavoidable accident doctrine.

Several other matters are complained of but since they are not likely to arise on a retrial or if they do, they would be against different evidentiary backgrounds, we refrain from expressing any views thereon.

█ The appeal from the order denying a new trial must be dismissed because that order is not appealable. Meyer v. Meyer, 76 S.D. 268, 77 N.W.2d 559.

The judgment appealed from is reversed.

SMITH, P. J., and ROBERTS and BIEGELMEIER, JJ., concur.

HANSON, J., not participating.