KRAMER, Adm., Appellant v. SIOUX TRANSIT, INC. Respondent

(180 N.W.2d 468)

(File No. 10625. Opinion filed October 21, 1970)

Rehearing denied December 15, 1970.

**Lacey & Lacey and Edwin C. Parliman,** Sioux Falls, for plaintiff and appellant.

**Davenport, Evans, Hurwitz & Smith, and Carleton R. Hoy,** Sioux Falls, for defendant and respondent.

ROBERTS, Presiding Judge.

Plaintiff is the administrator of the estate of his deceased mother, Hulda J. Kramer. Plaintiff sought damages for death by wrongful act and for the pain and suffering of decedent and also medical and burial expenses.

The complaint alleges that decedent was a passenger for hire on a bus operated by the defendant Sioux Transit, Inc., as a common carrier of passengers; that at the intersection of East Sixth Street and Sherman Avenue in the City of Sioux Falls, the driver negligently operated the bus causing Mrs. Kramer to be thrown to the pavement with great force as she was alighting from the bus; and that she died as a result of injuries sustained. Defendant specifically denied any negligence on its part which proximately caused or contributed to the fall of plaintiff's intestate. Defendant sought to avoid claim that contributory negligence as a defense imports negligence on the part of the defendant. A jury trial resulted in verdicts for the defendant. Plaintiff appeals.

Plaintiff contends (1) that the evidence established negligence on the part of the driver as a matter of law and since there was no issue of contributory negligence or assumption of risk the evidence does not support verdicts for the defendant; (2) that the court erred in refusing to instruct the jury that defendant was required "to provide everything necessary" for the safe carriage of decedent; (3) that the court erred in its refusal to admit in evidence a written statement of a witness made to the police after the accident containing recitals contradictory to her testimony; (4) that there was error in refusal of the court to permit a pathologist, witness for the plaintiff, to give his opinion as to what caused the

injuries discovered upon an autopsy and to answer hypo-
thetical questions; and (5) that the court erred in refusing to
give instructions requested by plaintiff relating to the doc-
trine of res ipsa loquitur.

On June 13, 1966, at about 1:30 p. m. decedent was
a passenger on a bus traveling east on Sixth Street approach-
ing the Sherman Avenue intersection. She gave the usual
signal that she wished to alight at the next corner and the
driver pulled over toward the curb on the south side of the
street. The driver of the bus gave the following account of
the manner in which the decedent got off the bus: "Well, the
buzzer sounded, there was a short notice, and I pulled to-
wards the curb which I as a rule get right up to the curb, but
this particular time I didn't and I stopped and opened the
doors and Mrs. Kramer slowly got off, which I waited for
her as she stepped up on the curb,. and when I was about
ready to go the doors were open, I just released the brakes
and somebody said 'wait' and I set the brakes again, the bus
did not move, and I looked over towards her and she was
reaching for something and at that time she started falling
over backwards."

The only other passenger on the bus was Mrs. Rachel
Stratton, who was sitting directly behind the driver with her
back to the windows on the north side. She testified that
she saw Mrs. Kramer leave the bus; that the bus driver put
the motor in gear, and that she heard someone call "wait"
and the driver stopped the bus immediately. "Q. What did
the bus do, did the bus stop? A. Certainly. I don't know
how it could have stopped so fast. Q. In other words it
stopped suddenly? A. "Yes." Counsel for plaintiff, claim-,
ing that some of the testimony of this witness was contrary
to statements made previously by her to the police, was per-
mitted to ask leading questions and to cross-examine. The
court rejected offer of the statement in evidence.

Anthony Wenbourne, then thirteen years of age, was at
his grandmother's house on the south side of Sixth Street
about a quarter of a block west of the described intersection
working with his father putting in forms for new steps and
saw the accident. We quote from his direct examination as

follows: "Q. Did you see the bus stop at the intersection? A. Yes. Q. Did you see a lady get out? A. Yes. Q. Tony, in your own words tell us what you noticed at that time and place * * * I was waiting for my grandmother to come home * * * a lady stepped down off of the bus onto the pavement, turned around, and then she fell * * * Q. Did you notice whether the bus started to leave the crosswalk where it stopped? A. It didn't start to leave. Q. You say what? A. It did not start to leave * * * Q. How far was the bus from the curb? A. About a foot. Q. About a foot? A. Yes. Q. That is, from the bottom step you would say it was about a foot over to the curb? A. Yes."

On cross-examination he testified: "Q. Then I believe you told Mr. Lacey and the jury in response to his question, that after she tried to turn around or something then is when she fell. A. Yes. Q. I believe that when he asked you if the bus had started to move, then you answered that it hadn't. A. Yes."

The testimony of James Wenbourne was substantially the same as that of his son. He testified that he saw Mrs. Kramer fall and the bus was not moving at that time.

There is some conflict in the evidence as to what happened. It is within the province of the jury to weigh the evidence and determine the facts and we cannot say that their verdicts are not without support in the record.

■ Plaintiff complains that the court committed prejudicial error in its instructions concerning the duty of care that a common carrier must exercise for the protection of a passenger. The instruction included language of the statute (SDCL 49-4-4) requiring a common carrier of persons for reward to "use the utmost care and diligence and a reasonable degree of skill". It is care commensurate with the risk involved. Annot. 9 A.L.R.2d 938. Plaintiff complained of the omission of the words of the statute requiring the carrier to "provide everything necessary for their safe carriage." It is not claimed that a common carrier is an insurer of the safety of its passengers. It is not suggested by counsel for appellant what degree of care could be greater than

"utmost care and diligence and a reasonable degree of skill." The language "provide everything necessary for their safe carriage" concerns the vehicle itself and not its operation. No prejudicial error resulted in refusing to include such language in the instruction. See Henrichs v. Inter City Bus Lines, 79 S.D. 267, 111 N.W.2d 327.

■ ■ As has been stated some conflict appears in the testimony of Mrs. Stratton, called by plaintiff, and a statement previously given by her to a police officer. The trial court permitted plaintiff considerable latitude in cross-examination and the asking of leading questions. Plaintiff offered the prior statement in evidence in connection with the examination of Mrs. Stratton. The court after commenting that counsel had fully interrogated the witness concerning the prior statement rejected the offer. The plaintiff assigns as error the refusal to admit the exhibit. The admission of cumulative evidence is ordinarily within the sound discretion of the trial court and its ruling thereon will not be disturbed unless it clearly appears that such discretion has been abused. Tufty v. Sioux Transit Company, 69 S.D. 368, 10 N.W.2d 767; 88 C.J.S. Trial § 91. The witness was interrogated at length by plaintiff's counsel concerning the statement. The witness sought to explain, but did not deny the making of any statement contained in the exhibit. Even if it could be held that it was error to exclude the exhibit it was not prejudicial.

■ A hypothetical question should be framed in accordance with some theory which the evidence reasonably lends support. It should include substantially all the facts relating to the subject upon which the opinion of the witness is asked. As this court said in Dean v. Seeman, 42 S.D. 577, 176 N.W. 649:

> "The propriety of allowing hypothetical questions rests largely in the discretion of the trial court, and, where such questions are allowable, it is the duty of the trial court to see that they are properly framed, that they are responsive to the issues in question, and that they assume only such facts as are supported by some evidence in the record.

Whether such facts have been actually proven is a question for the jury to decide. But the party framing such questions should be allowed a fairly wide latitude, so long as he keeps within reasonable bounds as to his theory of the case and the evidence supporting such theory. The opposing party has the right to rebut the facts assumed, as well as the testimony of the witness."

It is the theory of counsel for plaintiff that injuries which the decedent sustained could not have resulted from a fall without external force. Dr. Richard J. Weaver testified that he performed an autopsy on the body of Mrs. Kramer; that from his examination he found a fracture of the skull and considerable hemorrhage both outside and inside the brain; and there were also fractures of the fifth and sixth ribs on the right side and of the sternum. Hypothetical questions were objected to on the grounds that the questions assumed certain facts which the evidence did not reasonably tend to support. The ordinary function of an expert witness is to assist the jury by his superior knowledge in arriving at a correct conclusion from the facts in evidence, but his opinion is not ordinarily conclusive. And too, it must be made plain to the jury as well as to the expert what facts he bases his opinion on and he must not be left to decide between conflicting facts.

Dr. Weaver testified that he could not determine from the nature of the injuries sustained by decedent whether a fall backwards on the pavement could have caused all the injuries sustained by her. The following question propounded and objected to in the instant case indicates the facts assumed and the opinion sought by plaintiff: "Doctor, assuming that Hulda Kramer suffered injuries while stepping from the front steps of an ordinary city bus to concrete pavement or a concrete sidewalk or assuming as she placed both feet on the concrete surface she turned around and grasped at the bus door and said, 'Wait,' and assuming that the bus traveled a distance of some six or eight feet after she placed both feet on the ground and that when she said wait the bus stopped instantly and suddenly and that at that

instant she fell with her back toward the direction in which the bus was proceeding and landed on her back with her head on the pavement and that her feet were about at the front door going into the bus and that her head was in the area even with the front of the bus, state whether or not in your opinion what caused the injuries that you found?"

 Much must be left to the sound judicial discretion of the trial court in determining how far counsel must limit his questions so the opinion will be of assistance to the jury. 2 Wigmore, Evidence, 3d Ed., § 682. The trial court did not err in ruling that hypothetical questions were improper because they assumed facts regarding movement of the motor bus, a highly important factor in proving negligence, if any, on the part of the defendant.

Plaintiff assigns as error the refusal of the trial court to instruct the jury that the injuries sustained by decedent raised a presumption or inference of negligence on the part of the defendant company. The facts and circumstances require this court to determine if the action was submissible under the doctrine of res ipsa loquitur.

██ ██ The requirements of res ipsa loquitur are that the instrumentality which caused an injury must have been under the full management and control of the defendant or his servants; that the accident was such that according to common knowledge and experience does not happen if those having management or control had not been negligent; and that plaintiff's injury must have resulted from the accident. Barger v. Chelpon, 60 S.D. 66, 243 N.W. 97; Larson v. Loucks, 69 S.D. 60, 6 N.W.2d 436; Henrichs v. Inter City Bus Lines, 79 S.D. 267, 111 N.W.2d 327. Verdicts cannot rest on guess or conjecture. Plaintiff had the burden to prove negligence. It is only where the circumstances leave no room for different presumptions or inferences that the doctrine of res ispa loquitur applies. The doctrine cannot be invoked when it appears from the surrounding facts and circumstances that the accident may have resulted from a cause or causes other than the negligent act of the defendant. 65A C.J.S. Negligence § 220.12; Budgett v. Soo Sky Ways, Inc., 64 S.D. 243, 266 N.W. 253. The mere possibility that an act of the de-

fendant could have caused the death of plaintiff's decedent does not warrant application of the doctrine of res ipsa loquitur.

Judgment affirmed.

All the Judges concur.