**Emma Rene MALLOY, Plaintiff and Appellant,**

v.

**COMMONWEALTH HIGHLAND THEATRES, INC., Defendant and Appellee.**

**No. 14696.**

Supreme Court of South Dakota.

Argued March 6, 1985.

Decided Oct. 9, 1985.

Curt Ireland, Rapid City, for plaintiff and appellant.

Debra D. Watson of Wallahan Law Offices Rapid City, for defendant and appellee.

HENDERSON, Justice.

## ACTION

This is an appeal by Emma Rene Malloy (Malloy), plaintiff-appellant herein, from a Judgment entered on a jury verdict in a personal injury action and from an Order denying motions for a new trial and judgment n.o.v. A motion for judgment n.o.v. is based on and relates back to a directed verdict motion made at the close of all the evidence. *Swiden Appliance v. Nat'l Bank of South Dakota*, 357 N.W.2d 271, 277 (S.D.1984). Malloy thus raises the pro-

priety of the denial of her motion for a directed verdict as one of her two contentions herein. Malloy's second contention is that the trial court erred in failing to grant a requested instruction on res ipsa loquitur. We affirm.

## FACTS

In the early evening of September 10, 1982, Malloy was walking in front of the Elks Theatre (Theatre) in Rapid City, when a sudden, severe gust of wind blew out the plate glass window of the Theatre's display case striking Malloy upon the shoulder, head, and neck. Commonwealth Highland Theatres, Inc., defendant-appellee herein, is the owner and manager of the Elks Theatre. The display case is attached to and recessed in the outside of the Theatre building and its interior is accessible by moving one of two sliding glass panels. These panels each measured approximately 42 inches wide, 78 inches tall, and weighed 72 pounds. They were not locked but instead were freely movable and held in place by the display case's aluminum frame and track system. The amount of overlap between the top portion of the case frame and the glass panel was one-eighth inch. On the evening in question, the most exterior glass panel popped out in one piece and struck Malloy. Malloy was not cut and refused aid and assistance, assuring a Theatre employee that she was all right.

Malloy thereafter brought suit. By her amended complaint she alleged, inter alia, two theories of liability: the doctrine of res ipsa loquitur and specific acts of negligence. At trial, Malloy's counsel elicited testimony concerning the incident and its effect on her life. Malloy also examined Professor William Groves, Head of the Department of Mechanical Engineering at the South Dakota School of Mines. Professor Groves testified that the display window blew out because of a pressure difference created by the wind blowing into the case and pushing the window out, or by the wind blowing in front of the glass thereby creating a vacuum and sucking the window out. Groves stated that in consideration of the window's size, weight, and the one-eighth inch overlap at the top, the necessary pressure to cause the glass panel to bend out and disengage from the top track, and thus fly out in one piece, would be created by a 36-mile-per-hour wind. Groves further testified that in his opinion the one-eighth inch overlap on top was inadequate and that the display case was in an unsafe condition. Malloy also presented evidence that the highest wind speed recorded at the National Weather Bureau that day, located some ten miles from the Elks Theatre, was 45 miles per hour. Arnold Malloy, plaintiff's husband, characterized the velocity of the wind at the Theatre as being "severe" before the jury. The plaintiff, however, gave somewhat conflicting evidence to that of her husband, testifying that it was not a windy day, but, rather, "the wind come up all of a sudden." Malloy presented further evidence that Theatre's city manager was aware that the windows were not locked but were movable and that if left open, it was possible for the window to be sucked out.

On cross-examination, Professor Groves admitted that he could not calculate what an appropriate overlap would be; that he previously testified that the wind speed needed to create the required pressure was 113 miles per hour; that he initially incorrectly assumed that the display case opened into the Theatre lobby and was blown out by a wind therefrom; that downtown winds are increased in velocity because of building configurations; that he was not an expert in this field; and that a properly installed window could be blown out by the wind. In sum, he was convincingly impeached.

The Theatre also presented testimony by the Elks Theatre manager that she had inspected the display case twice that day, once in the morning and once in the afternoon, and found it to be closed and secure. Had the windows not been properly placed in their tracks, per Theatre's testimony, the window would not close at all. These were testified to as facts and not as professorial postulations. Theatre's testimony was that

the display case was checked and cleaned, as a practice, once a week. Theatre further presented evidence concerning Malloy's injuries or lack thereof. The proximate cause of plaintiff's alleged injuries was a serious question for the jury to decide. There was conflicting evidence on function and permanent impairment; Malloy's case was unquestionably hurt by her own physician's medical report that plaintiff had no significant deficit in her function and no significant permanent impairment.

At the appropriate times, motions for a directed verdict were made and refused. Malloy also proposed jury instructions on the doctrine of res ipsa loquitur but the trial court refused to so instruct the jury. At the close of the very adversarial trial, after two full days of testimony, with experienced counsel advocating their client's cause, a jury verdict for Theatre was returned, the jury thereby finding that there was no negligence on Theatre's part. Judgment was duly entered thereon. It is from the trial court's refusal to direct a verdict for Malloy and its refusal to instruct the jury as to res ipsa loquitur from whence appeal is taken.

DECISION

I.

DID THE TRIAL COURT ERR BY DENYING APPELLANT'S MOTIONS FOR DIRECTED VERDICT, NEW TRIAL, AND JUDGMENT N.O.V.? WE HOLD THAT IT DID NOT.

"A verdict is appropriately directed when there is no question for the trier of fact. *Thorstenson v. Mobridge Iron Works Co.,* 87 S.D. 358, 208 N.W.2d 715 (1973). However, it is seldom that a party having the burden of proving a proposition establishes such proposition as a matter of law." *Ziebarth v. Schnieders,* 342 N.W.2d 234, 236 (S.D.1984).

In the present case, Malloy had the burden of proving by a preponderance of the evidence: 1) that Theatre was negligent in the maintenance of its display case (duty owed and duty breached); 2) that said negligence was the proximate cause of her injuries; and 3) the extent and amount of the damages. *See Goff v. Wang,* 296 N.W.2d 729, 730 (S.D.1980). Malloy here contends the first two portions of her burden were met and that the trial court erred in failing to direct a verdict in her favor in this regard. In support of this contention, Malloy points to Professor Groves' testimony concerning the cause of the incident; his opinion that the one-eighth inch overlap was inadequate; and his opinion that the display case was in an unsafe condition. Malloy further directs this Court's attention to the testimony pertaining to the display windows which were not locked or supported by crossbars, and additionally, the testimony of Theatre's city manager that he was aware of downtown winds and, if left open, the window possibly could be sucked out. Malloy argues that this established Theatre's negligence as a matter of law; that said negligence was the proximate cause of injury; and that Theatre cannot defend on an Act of God theory.*

"A motion for a directed verdict should be granted only when it would be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence because reasonable men could draw but one conclusion therefrom." *Cowan v. Dean,* 81 S.D. 486, 498, 137 N.W.2d 337, 344 (1965).

It is only where facts are not in dispute or are such that reasonable men could not differ that the issues of negligence, contributory negligence and proximate cause become questions of law for court determination. *Bogh v. Beadles,* 79 S.D. 23, 107 N.W.2d 342; *Napier v. Pedersen,* 175 Neb. 703, 123 N.W.2d 577. "In other words, these questions become a matter of law only when the facts from which

---

* In its answer, Theatre alleged as an affirmative defense that the window blowout incident of September 10, 1982, was caused by an Act of God. The jury, however, was not instructed concerning this affirmative defense.

the inferences can be drawn admit of but one conclusion. This occurs rarely."

*DeBerg v. Kriens,* 82 S.D. 502, 506, 149 N.W.2d 410, 412 (1967) (citation omitted).

[T]he rule of reasonable judgment must be applied to each case upon its particular facts, and, if the testimony in behalf of the party having the burden of proof is clear and full, not extraordinary or incredible in the light of general experience, and not contradicted, either directly or indirectly, by other witnesses or by circumstances disclosed, and is so plain and complete that disbelief therein could not arise by rational processes applied to the evidence, but would be whimsical or arbitrary, then, and in such case, it is not only permissible, but highly proper, to direct a verdict ....

*Fluharty v. Midland Nat'l Life Ins. Co.,* 275 N.W.2d 347, 350 (S.D.1979) (quoting *Jerke v. Delmont State Bank,* 54 S.D. 446, 467, 223 N.W. 585, 594, 72 A.L.R. 7, 23 (1929)).

In the case at bar, Malloy, who had the burden of proof at trial, did not present testimony or evidence that was so clear, full, plain, complete, and uncontradicted that reasonable men could not differ on the issue of negligence. The jury, in point of fact, resolved all issues against Malloy by its verdict. Malloy's theory of negligence and liability rested almost entirely on Professor Groves' testimonial explanation of the cause of the incident and Groves' opinion that the frame and overlap were inadequate and the display case unsafe. These were explanatory postulations. On cross-examination, however, Professor Groves admitted the following: 1) that he was not an expert in the field; 2) that he could not calculate an adequate overlap; 3) that he had changed his conclusions from that previously testified to; 4) that he incorrectly assumed facts not in existence; 5) that he did not make a thorough investigation; and 6) that a properly installed window can blow out. Theatre also presented testimony that on the day of the occurrence the display case was inspected twice and found to be closed and secure.

Upon a review of the evidence as a whole, it cannot be said that Malloy's proof was such that the trial court should have directed a verdict in her favor and thereby remove the case from the jury's consideration. Professor Groves' theoretical postulations were apparently not well received by the jury. To the contrary, the evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. *Weber v. Bernard,* 349 N.W.2d 51, 53 (S.D.1984). At best, Professor Groves' testimony was discredited on cross-examination, if not contradicted, and the evidence was not such that reasonable men could not differ on the issue of negligence. If sufficient evidence exists, so that reasonable minds could differ, a directed verdict is not appropriate. *Cox v. Brookings Int'l Life Ins. Co.,* 331 N.W.2d 299, 300 (S.D.1983). *See also, Swiden Appliance v. Nat'l Bank of S.D.,* 357 N.W.2d at 277. The weight of the evidence and the credibility of the witnesses were therefore questions for the jury's determination. This Court cannot be the thirteenth juror. It appears that Malloy would have us reverse the trial court on its denial of a new trial and judgment n.o.v. because the jury's findings were not supported by the evidence and were unreasonable and supposedly arbitrary. We see no clear showing of abuse of discretion on the denial of an application for new trial as required by *Osterkamp v. Alkota Mfg., Inc.,* 332 N.W.2d 275 (S.D.1983). Furthermore, the requirements set forth in *Lewis v. Storms,* 290 N.W.2d 494 (S.D.1980), have not been met for the granting of a reversal of a denial of a motion for new trial in this case. Therefore, the trial court's denial of the motion for a directed verdict, as well as motions for new trial and judgment n.o.v., was not erroneous.

## II.

DID THE TRIAL COURT ERR BY REFUSING TO INSTRUCT THE JURY AS TO RES IPSA LOQUITUR? WE HOLD THAT IT DID NOT.

Res ipsa loquitur is primarily a rule of evidence, *Roster v. Inter-State*

*Power Co.*, 58 S.D. 521, 528, 237 N.W. 738, 741 (1931), and when applicable, the facts and circumstances attending the incident give rise to an inference or presumption of negligence on the part of the defendant. *Midwest Oil Co. v. Aberdeen*, 69 S.D. 343, 349, 10 N.W.2d 701, 703 (1943). However, this is a rebuttable presumption. Thus, like any other issue presented at trial, if an issue concerning res ipsa loquitur is supported by competent evidence in the record, the trial court has a duty to instruct the jury thereon. *Frazier v. Norton*, 334 N.W.2d 865, 869 (S.D.1983). In *Wagner v. Coca-Cola Bottling Co., Inc.*, 319 N.W.2d 807, 807–08 (S.D.1982) (quoting *Kramer v. Sioux Transit, Inc.*, 85 S.D. 232, 239, 180 N.W.2d 468, 472 (1970)), we stated:

> The requirements of res ipsa loquitur are that the instrumentality which caused an injury must have been under the full management and control of the defendant or his servants; that the accident was such that according to common knowledge and experience does not happen if those having management or control had not been negligent; and that plaintiff's injury must have resulted from the accident.

■ Although a plaintiff does not waive instructions on res ipsa loquitur by trying to establish specific acts of negligence through the introduction of *some* evidence which does not clearly and definitely establish the exact cause of the injury, *Fleege v. Cimpl*, 305 N.W.2d 409, 414 (S.D.1981), res ipsa loquitur is a rule founded on the *absence* of specific proof of omissions or facts which constitute negligence. *Barger v. Chelpon*, 60 S.D. 66, 73, 243 N.W. 97, 100 (1932). Thus, res ipsa loquitur is a rule of necessity and "should be invoked sparingly and only when the facts and demands of justice make the application essential." *Id.*

In the case at bar, Malloy, in an attempt to prove specific acts of negligence, introduced a substantial quantum of direct and detailed evidence and testimony. The exhibits introduced by Malloy included five 8″ by 12″ photographs of the display case, the window and its frame; five slides depicting the same items contained in the photographs; and three pages of mathematical calculations performed by Professor Groves, which purported to determine the force, overlap, and flexibility necessary to cause the window to disengage and blow out of the frame. The testimony elicited by Malloy included Professor Groves' explanation of how and why the display window came out; Groves' opinion that the frame overlap was inadequate and the display case was in an unsafe condition; testimony that the window was not locked, not supported or restrained by cross or lateral braces but was freely movable; testimony that Theatre would notice such defects by maintaining and changing the display case; and testimony from Theatre's city manager that he was aware of downtown winds and that the window could possibly be sucked out.

■ This testimony and evidence was obviously presented so as to establish the defective nature of the display case and Theatre's specific negligence in regard thereto. If believed and accepted by the jury, such evidence and testimony would tend to establish the exact cause of the injury and specific omissions or facts which constitute negligence. However, the res ipsa loquitur rule is founded on the *absence* of specific proof of omissions or facts which constitute negligence, *Barger*, and a plaintiff may introduce only *some* evidence of specific negligence without waiving his right to res ipsa loquitur instructions. *Fleege*. Here, there was not an absence of specific proof of omissions or facts which might constitute negligence and Malloy's quantum of evidence exceeded that which can be introduced without waiving res ipsa loquitur instructions. Malloy did not rely upon the proof of the happening of the incident in order to establish negligence. In contradistinction, Malloy relied on a substantial amount of direct and detailed evidence and testimony in an attempt to explain the accident as it actually occurred, the cause thereof, and Theatre's negligence in relation thereto. All the facts and circumstances of the incident appeared in the

evidence presented. When there is direct evidence concerning the cause of the incident and all the facts and circumstances surrounding it, the res ipsa loquitur rule is inapplicable. *Heffter v. Northern States Power Co.*, 173 Minn. 215, 217, 217 N.W. 102, 103 (1927); *Nekuda v. Allis-Chalmers Mfg. Co.*, 175 Neb. 396, 400, 121 N.W.2d 819, 822 (1963); *Lea v. Carolina Power & Light Co.*, 246 N.C. 287, 290, 98 S.E.2d 9, 11 (1957); and *Lopes v. Narragansett Elec. Co.*, 102 R.I. 128, 131, 229 A.2d 55, 58 (1967). Malloy's evidence simply went too far and she literally proved herself out of the res ipsa loquitur rule. She attempted to establish her cause of action by specific facts or omissions; she tried, assiduously, to detail negligence.

> [W]here specific negligence, the real or precise cause, is shown definitely by direct evidence there is no room for the presumption or inference which the res ipsa rule affords. The plaintiff is bound by his evidence in a res ipsa case just as he is in an ordinary negligence action and cannot in effect say to the jury, "I have shown you exactly how this [incident] occurred but you are, nevertheless, still at liberty to speculate and presume that it may have happened some other way."

*Rea v. St. Louis-San Francisco Ry. Co.*, 411 S.W.2d 96, 99 (Mo.1967). Malloy wants to have facts inferred which she failed to prove, through her own expert, to the satisfaction of the jury. Particularly, Malloy's proposed Jury Instruction No. 1, the res ipsa loquitur instruction, concludes in its final paragraph:

> Since the burden is on the plaintiff to prove by a preponderance of the evidence that the defendant was negligent, it is essential, in order to hold the defendant under this rule, that the evidence supporting an inference that the defendant was negligent have greater weight, that is, more convincing force in your minds, than all evidence to the contrary.

The trial court properly rejected this instruction, for plaintiff's case crumbled under the testimony of her own expert. It was not apparent to the trial judge, and rightly so, that the evidence supporting an inference that the defendant was negligent, had greater weight than all evidence to the contrary.

Res ipsa loquitur not being essential under these facts or the demands of justice, the trial court's refusal to so instruct the jury was not erroneous.

The Judgment and Order appealed from are therefore affirmed.

FOSHEIM, C.J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, concur.

MORGAN, J., concurs in part and dissents in part.

HERTZ, Circuit Judge, Acting as Supreme Court Justice, not participating.

MORGAN, Justice (concurring in part, dissenting in part).

I concur on the first issue but respectfully dissent on the second issue.

This would appear to be a classic case for application of the doctrine of res ipsa loquitur. The glass plate was under the control of the defendant, plate glass windows do not come flying into the street as a matter of course or without negligence on the part of those having control, and the plaintiff's injury concededly resulted from the accident. But, the issue revolves around whether the defendant waived the doctrine by introduction of evidence of specific acts of negligence attributable to the occurrence and resulting injury.

In *Barger v. Chelpon*, 60 S.D. 66, 243 N.W. 97 (1932), this court set out the three alternatives regarding application of the doctrine of res ipsa loquitur, found in outside authorities: (1) Any allegation of specific acts of negligence foreclosed invocation of the doctrine; (2) plaintiff is not deprived of the right to invoke the doctrine where *specific* acts of negligence merely are alleged; or (3) plaintiff is not denied the right to rely upon the doctrine, though he alleges specific acts of negligence and fails to substantiate these specific acts, if he also alleges negligence in general terms.

The *Barger* Court went on to adopt the third alternative as the South Dakota rule, stating: "If a plaintiff fails to prove or abandons the claim of specific acts of negligence and relies on general allegations, we are of the opinion that he should not be deprived of the benefits of the doctrine under consideration." 60 S.D. at 73, 243 N.W. at 100. The opinion further stated: "The rule, however, is founded on an absence of specific proof of facts or omissions constituting negligence[.]" 60 S.D. at 73, 243 N.W. at 100.

In discussing the first issue, the majority points out that Malloy's evidence of specific acts of negligence, "rested primarily on Professor Groves' testimonial explanation ..." which he terms "explanatory postulations." The majority then goes on to point out six specific aspects of that testimony rebutted on cross-examination and sums it up as follows: "At best, Professor Groves' testimony was discredited on cross-examination, if not contradicted, ...." A review of the record indicates that that indeed was the case; and I take no issue with the trial court's denial of the directed verdict motion. The evidence was so weak and he would probably have been subject to reversal if he had granted it.

My problem is that it is that same evidence, theoretical and discredited as it was, which the majority described as a "substantial quantum of evidence introduced in an attempt to prove specific acts of negligence." The rule this court adopted in *Barger, supra,* would be classified as the liberal rule. It permits the introduction of such evidence as is available rather than to offer inconclusive evidence and rely on the doctrine. The liberal rule may also be justified because of the unpredictability of just where the court will draw the line. *Annot.,* 33 A.L.R.2d 791, 795 (1954).

We have a classic example before us where the majority opinion permits introduction of "some evidence" but nowhere does it offer any definition or criteria to determine when "some" is "too much." I grant that that terminology in the opinion is a direct quote from our earlier decision,

*Fleege v. Cimpl,* 305 N.W.2d 409, 414 (S.D. 1981). That terminology in *Fleege* again was a direct quotation from 33 A.L.R.2d at 795. The A.L.R. quotation continues, however: "... or, as it is sometimes more concisely phrased, that the plaintiff's unsuccessful attempt to prove specific negligence will not deprive him of the inferences or presumption otherwise available under res ipsa loquitur." *Id.* As Dean Prosser comments:

> Plaintiff is of course bound by his own evidence; *but proof of some specific act does not necessarily exclude inferences of others....* It is only in this sense that when the facts are known there is no inference and res ipsa loquitur simply vanishes from the case. On the basis of such reasoning as this, it is generally agreed that the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur. (Emphasis added)

Prosser, Law of Torts § 40 (4th ed. 1971). We then come to the question: When should the trial court give the instruction on res ipsa loquitur?

I think the Wisconsin Supreme Court, which subscribes to Dean Prosser's theory of inferences cited above, stated rather well the guidelines in *Fehrman v. Smirl,* 131 N.W.2d 314, 318 (Wis.1964), when it said:

> When proof of negligence is offered, the trial judge, in contemplating the instructions which he will give to the jury, must evaluate the testimony to determine if there has been such substantial proof of negligence as to render superfluous the giving of an instruction on res ipsa loquitur. Sometimes the question as to the adequacy of the proof of negligence will be a close one; it will be within the sound discretion of the trial

judge to determine whether the giving of the instruction will be redundant.

Thus, we see that the decision is not resolved around the mere *offering of evidence* of specific acts of negligence by the plaintiff but, rather, it is resolved around the trial court's determination whether *the proof* is of such strength as to render superfluous the inferences that are attendant to res ipsa loquitur. I would hold that the trial court erred in failing to instruct on the doctrine of res ipsa loquitur and I would reverse the decision and remand for a new trial.