#27968-a-GAS
**2018 S.D. 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ANNETTE STEILEN,                                        Plaintiff and Appellant,

v.

CABELA'S WHOLESALE, INC.,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICK T. SMITH
Judge

\* \* \* \*

R. SHAWN TORNOW
Sioux Falls, South Dakota                        Attorney for plaintiff
                                                              and appellant.


GARY P. THIMSEN
MORGAN F. BREKKE of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota                        Attorneys for defendant
                                                              and appellee.


\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 8, 2018
OPINION FILED **01/24/18**

#27968

SEVERSON, Justice

[¶1.]     During the settling of jury instructions, plaintiff requested two instructions on the doctrine of res ipsa loquitur. The circuit court denied her requested instructions after concluding that they were not warranted by the evidence presented at trial. Plaintiff appeals. We affirm.

## Background

[¶2.]     On June 7, 2012, Annette Steilen and her now-husband Paul Steilen were at the Cabela's store in Mitchell, South Dakota, looking for items for their new camper. As Annette was walking down the camper aisle, she heard Paul comment, "I think this is what we're looking for." Paul was behind Annette, and Annette was almost to the end of the aisle. She turned toward Paul to see to what he was referring. She explained that as she turned, the top of her left shoulder "brushed" a heavy drop-down steel receiver hitch. The hitch fell from Cabela's shelving unit. As the hitch fell to the ground, it hit Annette's left wrist. She explained that she immediately yelled out and reacted to the pain by swearing and crying. Paul turned around and asked her what happened. She told Paul that the hitch "just fell out of the rack and hit [her]." She also told him that "it just hurts like hell." She and Paul picked up the hitch and returned it to the display rack or a nearby shelf. They decided to leave Cabela's.

[¶3.]     As Paul and Annette were leaving, they reported the incident to an employee. The employee referred them to Doug Haas, the store's hard lines manager. Annette asked for and was given ice. Haas prepared an incident report based on the information relayed to him by Paul and Annette. Describing the

incident, he wrote: "customer brushed/bumped a receiver hitch with shoulder and it fell and contacted her arm/shoulder/wrist as it fell." Haas testified that he and another associate checked the display hitches and later reported that nothing was out of place.

[¶4.]      After leaving Cabela's, the Steilens went to the emergency room in Mitchell to have Annette's wrist examined. She was treated and released. She subsequently sought care by her primary care provider. She continued to receive medical treatments and procedures following her injury at Cabela's. She was not able to return to work for nearly four years.

[¶5.]      Annette brought suit against Cabela's, alleging negligence. The case proceeded to a jury trial on July 25, 2016. During the settling of jury instructions, Annette requested two pattern jury instructions on the doctrine of res ipsa loquitur. She argued that the instructions were appropriate because the only evidence of negligence was the fact that the hitch—under Cabela's control—fell. The circuit court refused the instructions, concluding that they were not warranted by the evidence presented at trial. It remarked, "I think this is an instruction that's intended to be given in limited circumstances, in extreme cases, where it is clearly obvious that but for negligence, this doesn't happen, such as being electrocuted in a pool." The jury returned a verdict in favor of Cabela's.

[¶6.]      Annette appeals, asserting that the circuit court committed reversible error when it did not instruct the jury on the doctrine of res ipsa loquitur.

## Analysis

[¶7.] Annette argues that she was prejudiced by the court's refusal to instruct the jury on the doctrine of res ipsa loquitur. She claims that her requested instructions correctly stated the law and were supported by competent evidence. She further asserts that by denying her instructions, the court failed to properly instruct the jury overall.

[¶8.] It is well established that a circuit court "has a duty to instruct the jury on applicable law where the theory is supported by competent evidence." *Schultz v. Scandrett*, 2015 S.D. 52, ¶ 35, 866 N.W.2d 128, 140 (quoting *Jahnig v. Coisman*, 283 N.W.2d 557, 560 (S.D. 1979)); *accord Malloy v. Commonwealth Highland Theatres, Inc.*, 375 N.W.2d 631, 636 (S.D. 1985). Therefore, while we review a court's decision to deny a requested instruction for an abuse of discretion, "when the question is whether a jury was properly instructed overall, the issue becomes one of law reviewable de novo." *Vetter v. Cam Wal Elec. Co-op, Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615.

[¶9.] The three essential elements of res ipsa loquitur are:

> (1) the instrumentality which caused the injury must have been under the full management and control of the defendant or his servants; (2) the accident was such that, according to knowledge and experience, does not happen if those having management or control had not been negligent; and (3) the plaintiff's injury must have resulted from the accident.

*Wuest ex rel. Carver v. McKennan Hosp.*, 2000 S.D. 151, ¶ 18, 619 N.W.2d 682, 688 (quoting *Van Zee v. Sioux Valley Hosp.*, 315 N.W.2d 489, 492 (S.D. 1982)); *accord Fleege v. Cimpl*, 305 N.W.2d 409, 412-13 (S.D. 1981).

[¶10.]     According to Annette, the hitch was under the full control and management of Cabela's by and through its employees, and a hitch would not ordinarily fall from its shelving if due care had been exercised by Cabela's employees.  She also argues that she was without evidence to detail Cabela's negligence on June 7, 2012.  In her brief, she emphasizes that Cabela's claimed it lacked video surveillance of the accident.  She further asserts that she lacked access to accident-related information from Cabela's.

[¶11.]     "Res ipsa loquitur is primarily a rule of evidence[.]"  *Malloy*, 375 N.W.2d at 635.  It "is founded on the absence of specific proof of omissions or facts which constitute negligence."  *Id.* at 636.  However, "[t]he doctrine should be invoked sparingly and only when facts and demands of justice make its application essential."  *Fleege*, 305 N.W.2d at 413.  "It is only where the circumstances leave no room for different presumptions or inferences that the doctrine of res ispa loquitur applies."  *Kramer v. Sioux Transit, Inc.*, 85 S.D. 232, 239, 180 N.W.2d 468, 472 (1970); *accord Wagner v. Coca-Cola Bottling Co.*, 319 N.W.2d 807, 808 (S.D. 1982).  Moreover, for the doctrine to apply, "the circumstances attending upon the accident [must be] in themselves of such a character as to justify . . . inferring negligence as the cause of the injury."  *Schmeling v. Jorgensen*, 77 S.D. 8, 18, 84 N.W.2d 558, 564 (quoting *Barger v. Chelpon*, 60 S.D. 66, 243 N.W. 97, 98 (1932)).  Therefore, "[t]he doctrine cannot be invoked when it appears from the surrounding facts and circumstances that the accident may have resulted from a cause or causes other than the negligent act of the defendant."  *Kramer*, 85 S.D. at 239, 180 N.W.2d at 472.

[¶12.]     From our review of the record, the circuit court did not commit reversible error when it refused Annette's requested instructions. Annette's injury occurred in a retail setting involving a display of merchandise offered for public sale, which merchandise could ordinarily be handled and manipulated by customers. *See, e.g., Wagner*, 319 N.W.2d at 808 (merchandise subject to third-party contact did not eliminate the possibility of mishandling). Also, Annette testified that she brushed the hitch with her shoulder when she turned to hear what Paul had said, which could suggest that the accident may have resulted from a cause other than Cabela's negligence. *See Kramer*, 85 S.D. at 239, 180 N.W.2d at 472.

[¶13.]     We also note that Annette entered evidence directly tending to show a lack of care on the part of Cabela's. Using an exhibit depicting the hitch on the rack at Cabela's, Annette asserted to the jury that the heavy hitch was hanging on the rack by a single wire unit. She also used the exhibit as evidence that Cabela's was negligent in displaying the hitches in a manner that caused them to jut out. In her brief, she claims that "the ordinary and common sense inference is that Cabela's employees—when stocking the heavy drop-down receiver hitches—negligently failed to properly secure them when they attempted to place them in the wire shelving rack—therefore, causing the heavy sharp steel hitches to precariously jut out into the customer's walkway area of Cabela's shopping aisle."

[¶14.]     We recognize that "a plaintiff does not waive instructions on res ipsa loquitur by trying to establish specific acts of negligence through introduction of *some* evidence which does not clearly and definitely establish the exact cause of

injury[.]" *Malloy*, 375 N.W.2d at 636. But the doctrine of res ipsa loquitur looks to the neutral circumstances of full control and management by the defendant and, here, Annette's evidence leaves room for different presumptions or inferences negating the applicability of the doctrine. *See Wuest*, 2000 S.D. 151, ¶ 19, 619 N.W.2d at 688 (The accident must be "such that, according to knowledge and experience, . . . [it] does not happen if those having management or control had not been negligent[.]").

[¶15.]     Affirmed.

[¶16.]     GILBERTSON, Chief Justice, and ZINTER, KERN, and JENSEN, Justices, concur.