MIDWEST OIL COMPANY, Appellant, v. CITY OF ABERDEEN, Respondent

(10 N. W.2d 701.)

(File No. 8588. Opinion filed July 27, 1943.)

**Danforth & Danforth,** of Sioux Falls, for Appellant.

**F. W. Noll,** and **E. B. Harkin,** both of Aberdeen, for Respondent.

RUDOLPH, J. Plaintiff brought this action to recover damages sustained due to a break in a water main which was a part of the water supply system operated by the defendant city of Aberdeen. Plaintiff operates a gasoline filling station in the city of Aberdeen. In the street in front of this filling station the defendant maintains a ten-inch water main as a part of the water supply system of the city. On the night of January 7, 1941, at about midnight, a break was discovered in this ten-inch main in front of the filling station operated by plaintiff. The employees of the city water department were called and consumed approximately three hours in shutting off the water . The water had worked its way from a break in the pipe to a point adjacent to the underground gasoline storage tanks used in connection with the filling station and the pressure of the water had evidently caused the tanks to break. The water then forced its way into the tanks. At the time the break was discovered water and gasoline were being forced through the air vent pipe. When the city employees came to the station and removed the cap from the top of the gasoline tank, water and gasoline were forced from the tank and into the air about 15 inches high. This ten-inch main was made of

cast iron and is described in the record as "class 150 centrifugal cast." In the process of manufacture the pipe was tested under a 500 pound pressure. The main was installed in 1932, was laid below the frost line and after it was laid and before the ditch was filled, water was turned into the main under the normal water pressure of the supply system which is between 50 and 60 pounds. No evidence was introduced to show the cause of the break in the pipe and there is no evidence of negligence on the part of the city either in the installation or maintenance of this water main unless this evidence may be inferred by the application of the rule of res ipsa loquitur. The trial court found that the break in the main was not due to the negligence of the defendant city and denied plaintiff any recovery for the damage sustained.

 We consider first appellant's contention that the respondent city is absolutely liable for the damage occasioned by the breaking of the main and that this liability is present regardless of negligence. This contention is based upon a rule now generally credited to the English case of Rylands v. Fletcher, L. R. 1 Exch. 265, decided in 1866, wherein the court announced a rule as follows: "We think that the true rule of law is, that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all damage which is the natural consequence of its escape."

This rule has been the subject of consideration in subsequent English cases with the result that at least one author after reviewing these cases has been forced to the conclusion that "from this welter of cases it is impossible to extract any consistent principle * * *." Arthur L. Goodhart, "Restatement of Law of Torts, Vol. III: A Comparison Between American and English Law", 89 U. of Pa. L. Rev. 265-274. The rule has been discussed in many American cases. See articles by Francis H. Bohlen, 59 U. of Pa. L. Rev. 298, 373, 423. No attempt will be made here

to discuss the many cases where the rule has been considered. We are content to rest our decision on this feature of the case upon the rule of absolute liability for tort as set forth in the Restatement of the Law of Torts, Vol. III, Division 3, Chapters 20 and 21. Chapter 20 relates to liability of possessors and harborers of animals and obviously has no application to the present facts. Other than the liability relating to the possessors of animals, absolute liability for tort is limited to ultrahazardous activities as defined in Chapter 21. The Restatement has apparently tried to avoid some of the controversy concerning the case of Rylands v. Fletcher by inserting a caveat to the comment on Clause (a) of Section 520 wherein it is stated that "The Institute expresses no opinion as to whether the construction and use of a large tank or artificial reservoir in which a large body of water or other fluid is collected is or is not an ultrahazardous activity." The facts in the Rylands-Fletcher case had to do with the collection of water in a large reservoir which escaped without the fault of the defendant and damaged the plaintiff. We are not here concerned with the collection of water in a manner comparable to that in Rylands v. Fletcher. The present facts disclose water being sent through a ten-inch main in the manner now generally accepted for the purpose of furnishing a water supply to city dwellers. We think it clear that such a distribution of water does not constitute an ultrahazardous activity. The definition of an ultrahazardous activity as set forth in Section 520 of the Restatement of the Law of Torts is as follows:

. "An activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage."

Water mains are universally in use in cities, and to hold that a proper and reasonable use of such mains "necessarily involves a risk of serious harm to the person, land or chattels of others" would be contrary to the experience of at least several generations.

■ It might be suggested that plaintiff's loss is the

same whether this pipe broke by accident or by fault of the city, and that plaintiff should be made good his loss, as it was by reason of the activity of the city that the loss was occasioned. This suggestion overlooks the fact that the water system of which this ten-inch main was a part, was installed and in operation for the benefit of the plaintiff as well as all other residents of Aberdeen. Plaintiff being engaged in business, it is assumed that the water supply was not only available but was actually being used to plaintiff's benefit and advantage. In a very real sense, therefore, plaintiff was the voluntary participant in the very activity concerning which it now contends the city should conduct at its peril. Under these circumstances the justice of plaintiff's demand for compensation, regardless of defendant's fault, fails.

Plaintiff cites the case of Nelson v. City of Sioux Falls, 67 S. D. 320, 292 N. W. 868, and contends that the rule announced in that case imposes a liability upon the city under the facts here presented. In that case the facts disclosed that the city so constructed its storm sewer that there was discharged on plaintiff's property a large quantity of water that otherwise would not have flowed there. The city of Sioux Falls by its acts caused a positive and direct invasion of plaintiff's property. By constructing its storm sewer in such a manner as to cast water upon plaintiff's property the city placed itself in the same position as it would have been had it intentionally invaded the property and damaged plaintiff. Under the present facts, plaintiff's damage was not due to the method or plan of construction of the water system. There is nothing here that places the city of Aberdeen in the class with an intentional wrong doer; plaintiff's damage was due either to a fortuitous circumstance, for which we hold the city is not liable, or to the negligence of the city in the installation and maintenance of the particular water main that broke and caused the damage. We now consider the negligence feature of the case.

As stated above there is no evidence of negli-

gence on the part of the city except as such negligence might be inferred by the application of the doctrine of res ipsa loquitur. This doctrine as defined and limited by the Supreme Court of the United States in the case of Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905, has been approved by this court in the case of Barger et al. v. Chelpon, 60 S. D. 66, 243 N. W. 97. The doctrine does not create an irrebuttable presumption in favor of the plaintiff, it simply warrants the inference of negligence. As stated in the opinion in the case of Sweeney v. Erving, supra [228 U. S. 233, 33 S. Ct. 418, 57 L. Ed. 815, Ann. Cas. 1914D, 905]: "* * * res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict."

The trial court decided the issue of defendant's negligence against the plaintiff and the facts and the inferences to be drawn from the facts, must be reviewed in the light of this decision. Under the rule above annoucned our inquiry must be whether there are facts and inferences which the trial court could weigh against the inference created by the doctrine and refuse to find the city negligent. The facts disclose that this broken main was installed in 1932, that it was laid below the frost line, and while open to inspection was subjected to the pressure under which it was to be used. The trial court found, and the evidence is sufficient to sustain the finding, that the main was properly laid in a properly prepared ditch. The record further discloses that the main was not subjected to any abnormal pressure, nor is there indication in the record that it was subjected to any exceptional internal or external force which would cause the break. The above facts are sufficient, in our opinion, to justify the trial court to refuse the inference which

it was warranted, but not compelled, to accept, under the doctrine of res ipsa loquitur. Certainly there is reason to doubt under the facts of record that the break occurring in 1941, and after the main had been in the ground almost nine years, was due to a defect in the pipe which could with reasonable care have been discovered when the pipe was laid, and this doubt exists, entirely without regard to the fact that the evidence discloses that the pipe was tested for the normal pressure. In the case of George Foltis, Inc. v. City of New York, 287 N. Y. 108, 38 N. E.2d 455, 460, the New York court was confronted with a state of facts very similar to those now before us, and the contentions of the parties were similar to the contentions here made. There, as here, the main had been in the ground approximately nine years. The court in a well reasoned opinion held the doctrine of res ipsa loquitur applicable, but under the facts, held that a jury would not be impelled to infer negligence under that doctrine. Speaking with reference to the time the main was in the ground the court said:

"The lapse of time before the break occurred presents ground for argument that under the circumstances of this case the break was not due to an original defect, which careful inspection might have revealed, in the pipes or in the manner in which the pipes were laid."

And further, "* * * plaintiff's evidence, even while unrebutted, left serious doubt whether the break in 1938 was due to conditions which might have been avoided by the exercise of care in 1929."

We are of the opinion, further, that any inference of negligence occurring following the installation of the main is rebutted by facts of record showing that the main was not subjected to any abnormal pressure and was of a type that should last for years in excess of the time this main was in the ground. There was no occasion for the city either to replace or inspect the pipe following its installation. We are, therefore, of the opinion that while the record and the application of the doctrine of res ipsa loquitur might sustain a finding of negligence, such finding is not compelled.

The facts of record to which we have referred, if not sufficient in themselves to rebut the inference of negligence, are amply sufficient to sustain an inference by the trial court opposed to the inference created by the application of the doctrine of res ipsa loquitur. Even considering the facts in a light most favorable to plaintiff, we are of the view that these facts at least were sufficient to sustain conflicting inferences regarding negligence. The weighing and choice of such inferences is the province of the trier of the facts, in this case the trial judge.

 Appellant contends that the facts compel a finding that the city was negligent in shutting off the water after the leak was discovered. On this issue the court found as follows:

"VII. That immediately after the discovery of the break, the defendant, by its agents and employees, shut off the valves on said mains as promptly as possible, under the existing circumstances, the streets being covered with ice to a depth of 2 to 3 inches; the weather being cold and the break having been reported to the water department about 1:00 o'clock in the morning, stopping the flow of water through said break without any unreasonable delay and within three (3) hours after the break was reported to the City Water Department, and that no damage to the defendant was caused by any delay or failure of action on the part of the defendant."

We are of the opinion that the facts are sufficient to support the court's finding.

The judgment is affirmed.

All the Judges concur.