The CITY OF HOUSTON, Appellant,

v.

John B. CHURCH, Appellee.

No. 16876.

Court of Civil Appeals of Texas, First District.

June 30, 1977.

Rehearing Denied Aug. 4, 1977.

Otis H. King, City Atty., Dale M. Tingleaf, Asst. City Atty., Houston, for appellant.

Hofheinz & Harpold, Gary L. Crofford, Houston, for appellee.

COLEMAN, Chief Justice.

This is an appeal from a judgment entered on a jury verdict awarding plaintiff damages for injuries to his warehouse and its contents suffered as a result of flooding from a broken waterline operated by the City of Houston. The judgment will be reformed and affirmed.

In 1961 S. E. Realty, a corporation, owned real property on which an addition to a warehouse was being constructed. A waterline was uncovered which ran under the planned addition. The owner of the property did not know that the line was in use and ascertained that it was not within a city easement. An employee of the owner broke the line with a sledge hammer and discovered that it was a water main. The city was notified and it repaired the break. Thereafter the building was constructed over the waterline.

In 1972 the waterline broke from unknown causes beneath the building and damage resulted to the building and its contents. On that date the land and the premises were owned by John B. Church, the plaintiff.

After exhausting his administrative remedies, Mr. Church filed suit against the city alleging that his damage was caused by the negligence of the city or, in the alternative, that his damage resulted from the trespass on the part of the city. The city denied negligence and alleged as a defense to the trespass count that it had acquired an easement by prescription. The city asserts that the trial court erred in submitting in connection with a general issue on negligence an instruction on res ipsa loquitur. The point must be sustained.

The doctrine of res ipsa loquitur is applicable when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Mobil Chemical Company v. Bell*, 517 S.W.2d 245 (Tex.1974). Where the evidence shows that an accident may have happened as a result of two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause,

the rule of res ipsa loquitur does not apply. *LeBlanc, Inc. v. Gulf Bitulithic Company*, 412 S.W.2d 86 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.).

■ The evidence establishes that this accident is not of such character as would not happen in the absence of negligence. There is testimony that underground water-line breaks are caused either by electrolysis or ground shifts, which are acts of nature and are unpredictable. There is testimony that leaks resulting from these causes frequently occur in the City of Houston. The fact that the water main began leaking under the plaintiff's building is not that character of an accident that would support a reasonable inference that the city was negligent in causing or permitting it to occur. *Barragan v. Munoz*, 525 S.W.2d 559 (Tex.Civ.App.—El Paso 1975, no writ).

The jury found that the operation of the water pipeline by the City of Houston was a direct continuous trespass of John B. Church's property rights and that the trespass was a proximate cause of his damages. The city requested a judgment notwithstanding the verdict on the ground that the judgment based upon trespass may not stand because there was no evidence that the city was a trespasser. The city asserts that the evidence proves as a matter of law that at the time of the occurrence in question the city had acquired a prescriptive right to maintain its waterline beneath the plaintiff's property. The city stipulated that it had acquired no prescriptive rights prior to the year 1961.

There is no evidence to establish the circumstances surrounding the original act of the city in laying the pipeline across the property in question. Testimony was admitted without objection that the city probably deviated from the street line at that place in order to avoid problems it would encounter at a point where the road goes under the railroad line. There is speculation that the line probably was constructed at a time when the land was owned by the railroad company. There is no probative evidence to establish the time when the line was constructed. The city's claim to a prescriptive easement is based on facts showing that the line was discovered in 1961 by the owner of the property and that the city continued to use the line for a period of ten years thereafter.

An officer of the corporation owning the property at that time testified that he instructed the architect employed by the corporation to handle the construction of the building so as not to permit the building to be constructed over a live waterline. He testified that he agreed to grant the city an easement in which to lay a waterline alongside the building and that he saw a city crew working in that area. There is evidence that city employees knew that the building was being constructed over the waterline. There is no evidence that the city made a protest concerning this use of the property. The corporate officer testified to facts showing that he was under the impression that the line had been killed.

The case of *Rosborough v. Cook*, 108 Tex. 364, 194 S.W. 131 (1917) contains the statement:

> "The law of limitation of actions for land is founded upon notice. The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim. . . ."

The elements essential to establish title by adverse possession under the ten year statutes of limitations, Tex.Rev.Civ.Stat. Ann. art. 5510 (1925), are prescribed by that article and defined in arts. 5514 and 5515, supra. Among other things the entry on the land must be under a "claim of right." This term has been defined by the Supreme Court of Texas as follows:

> "The 'claim of right' to which the statute refers simply means that the entry of the limitation claimant must be with the intent to claim the land as his own, to hold it for himself; and such must continue to be the nature of his possession."

The court further held that the intention of the possessor to claim the land as his own or to hold it for himself must be manifested

by an open or visible act or declaration showing such a purpose. *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781 (1954).

■ The hostile and adverse character of the user necessary to establishment of an easement by prescription is the same as that which is necessary to establish title by adverse possession. Use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking. *O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878 (1960).

■ Notice of a hostile claim is given by actual possession that is of such a character as to indicate *unmistakably* an assertion of a claim of *exclusive* ownership in the occupant. The law's requisites are not satisfied if the occupancy is shared with the record owner. *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925 (1948).

■ Evidence of actions by the adverse claimant which imply recognition of the record owner's right to possession will raise a fact issue as to the hostile character of the claimant's possession. *Thompson v. Moor*, 14 S.W.2d 803 (Tex.Com.App., Sec. A, 1929).

In a case where the county tax assessor sought to establish title to land by adverse possession the Supreme Court of Texas held that the necessary hostile claim was defeated by evidence that the record owner paid taxes on the land each year; that the tax assessor had constructive knowledge of this fact and failed to notify the owner that he was claiming the land. *Dunlop v. Poole*, 142 Tex. 124, 176 S.W.2d 310 (1943). The court said: ". . . When Dunlop paid his taxes on this land, equity, good conscience, and public policy called on T. H. Poole to inform Dunlop that he, Poole, was claiming the land and rendering the same for taxation. Certainly T. H. Poole should not have remained silent under such circumstances; nor, by reason of such silence, can he take advantage of same and claim a limitation title to Dunlop's land. . . ."

In *Wright v. Vernon Compress Company*, 156 Tex. 474, 296 S.W.2d 517 (1956), the Supreme Court said: ". . . The evidence shows only mere occupancy of the land by Charley Shahay. There is no evidence showing that the claim of Shahay was adverse. There is evidence that he lived on the land, but none that he claimed the land as his own. . . . Mere occupancy of land without any intention to appropriate it will not support the statute of limitation. . . ."

■ Entry and possession without a claim of right is nothing more than a trespass. Unless the true owner has actual knowledge of the *hostile* claim, the possession must be so open, visible, and notorious as to raise the presumption of notice that the rights of the true owner are invaded intentionally and with the purpose of asserting a claim of title adverse to his, so potent that the owner could not be deceived, in order to mature a title by adverse possession. *Houston Oil Company of Texas v. Stepney*, 187 S.W. 1078 (Tex.Civ.App.—Beaumont 1916, writ ref.); *Winchester v. Porretto*, 432 S.W.2d 170 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref. n.r.e.).

■ Whether possession has been adverse depends on the intention of the limitation claimant in entering upon and using the premises. This is true even when there has been action by the claimant of a prima facie hostile import. The question is essentially one of fact and a court is rarely justified in holding that such an adverse intention is established as a matter of law. *Harrell v. Crabtree*, 271 S.W.2d 130 (Tex. Civ.App.—Eastland 1954, writ ref. n.r.e.).

■ There were no signs or markers on the surface of the land to indicate the existence of the pipeline in question. There is no evidence that the city began the use of the pipeline under a claim of right. The owner discovered the line and intentionally broke it. After the city was notified and stopped the flowing water, the owner continued the construction of a building over the line. These were acts asserting ownership. There is no evidence that the city

notified the owner that it claimed an easement or a right to use the land for a water main. The evidence is not conclusive that the "use" was open, notorious, hostile, and adverse for a period of more than ten years. A failure to prove any one of the essential elements is fatal. *Maricle v. Hines*, 247 S.W.2d 611 (Tex.Civ.App.—Fort Worth 1952, no writ).

The city has failed to request issues on title by adverse possession or to prove as a matter of law that it has acquired an easement by prescription. The trial court could properly have entered a judgment based on the jury's findings on the issues concerning trespass.

Since a judgment could properly have been entered on the issues relating to trespass, the error of the trial court in instructing the jury on res ipsa loquitur is harmless.

The city asserts that there is no evidence which at law will support the jury's findings of $1,668.00 in answer to special issue number 9, the damage issue. This contention is based on the fact that the testimony concerning the value of cardboard cartons which were damaged by the flooding of the warehouse did not establish "market value". The plaintiff testified that property was valued at $209.00 and said "this was the total cost of the boxes that was damaged by the water." He further testified that when the owner of the property moved it out of the warehouse, he simply deducted the value of the damaged property from that what was owed for storage and handling. He stated that "simply took their word for the value of the product that was stored there and lost."

 The proper measure of damages for destroyed property is its market value. *Shaw Tank Cleaning Co. v. Texas Pipeline Co.*, 442 S.W.2d 851 (Tex.Civ.App.—Amarillo 1969, writ ref'd n.r.e.). The testimony quoted above does not establish the market value of the paper cartons.

In our original opinion it was stated that the judgment would be reversed and the cause remanded unless John B. Church filed a remittitur in the sum of $209.53, in which event the cause would be affirmed. The remittitur has been filed. The judgment is reformed to award John B. Church the sum of $1,458.47 as damages and as reformed is affirmed.