Kerby R. ANDERTON, Plaintiff and Appellant,

v.

Terry MONTGOMERY and Tom Montgomery, dba Vernal Hide & Fur Company, Defendant and Respondents.

No. 15980.

Supreme Court of Utah.

Feb. 15, 1980.

---

2.   *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

George E. Mangan, Roosevelt, for plaintiff and appellant.

Stephen B. Nebeker and Paul S. Felt, of Ray, Quinney & Nebeker, Salt Lake City, for defendants and respondents.

HALL, Justice:

This appeal is taken from the dismissal of a personal injury action pursued by plaintiff Kerby R. Anderton against defendants Terry and Tom Montgomery, owners and operators of the Vernal Hide and Fur Company.

Defendants' business, located in Vernal, Utah, deals, among other things, in commercial sale of sheet metal. Plaintiff, a part-time welder, visited defendants' place of business on September 26, 1975, for the purpose of purchasing sheet metal for the construction of a metal box. Plaintiff was conducted into defendants' business yard by defendant Terry Montgomery, and shown a display device used to exhibit sheet metal samples. The display consisted of a rack, set on a pipe frame and holding sheet metal samples vertically, such that they could be turned from one side to the other, like the pages of a book. As plaintiff and another individual who had accompanied him began turning through the samples, defendant Terry Montgomery was called away by a telephone call. While plaintiff, assisted by his friend and another employee of defendants, continued to examine the samples on the rack, the right side of the pipe frame supporting the display collapsed, causing the rack bearing the samples to crash down onto plaintiff, driving the pipe through the flesh of his right hip and buttock. The accident resulted in partial, permanent impairment of plaintiff's right hip and leg.

Plaintiff thereupon instituted suit against defendants. At trial, defendants asserted that they had used the display device for some six months without any prior difficulty, but were unable to point to any specific factor which could have been responsible for the frame's collapse. Plaintiff was likewise unable to establish any specific conduct on defendant's part giving rise to the collapse. Consequently, plaintiff requested that the court instruct the jury regarding the doctrine of res ipsa loquitur, which instruction was given, over defendants' objection. Defendants requested an instruction explaining the nature of an "unavoidable accident" under the law, which was also given, over plaintiff's objection. The jury found neither party negligent and plaintiff was therefore denied recovery for his injuries.

Sometime subsequent to the entry of judgment, Mr. Stephen B. Nebeker, counsel for defendants, while preparing for the defense of a separate action involving a company by the name of H & S Trucking, learned that a former owner of that company, one LeRoy Dean Huber, had served on the jury in the instant case. Neither Mr. Nebeker nor Mr. Huber had been aware of their connection in this regard at the time of the former trial; Mr. Huber had denied, on voir dire, any connection or acquaintance with either counsel, and Mr. Nebeker had never dealt with Mr. Huber pursuant to his dealings with H & S Trucking, as Huber had sold his interest therein in 1973, while the litigation involving the services of Mr. Nebeker did not arise until 1974. Mr. Nebeker, however, notified the trial court immediately regarding the relationship thus discovered, whereupon a hearing was held. The trial court ruled that plaintiff's interests had not been prejudiced by reason of the relationship since, at the time of the trial, neither Mr. Nebeker nor Mr. Huber was aware that it existed.

On appeal, plaintiff first claims prejudice by reason of conflict and inconsistency in the jury instructions given by the trial court below. As previously mentioned, plaintiff requested and received instructions relating to the doctrine of res ipsa loquitur, and to its application in the present case. The instructions given were as follows:

### Instruction No. 4

Our law recognizes a doctrine known as res ipsa loquitur which means: The thing speaks for itself. By reason of it, under certain circumstances, one who is injured may hold another responsible without showing the exact conduct of the other party that caused or set in motion the act that caused the injury. The doctrine of law may be applied only under special circumstances, they being as follows:

First: That the rack of sheet metal and the stand pipe that broke and collapsed upon the plaintiff, Kerby Anderton, which proximately caused the injury to him, was in the possession and exclusive control of the defendants Terry Montgomery and Tom Montgomery at the time the cause of injury was set in mo-

tion, and that it appears that the injury resulted from some act or omission incident to the manner in which the defendants maintained or constructed or exercised due care in the use of the said rack of sheet metal. This does not mean that defendants had to be present at the time of the injury or that the plaintiff could not be engaged in assisting the defendants agents in locating the desired piece of sheet metal.

Second: That the incident was one of such nature as does not or would not have happened in the ordinary course of things, if those who have control of or are responsible for the rack of sheet metal, use ordinary care.

Third: That the circumstances surrounding the causing of the occurrence were such that the plaintiff is not in a position to know what specific conduct or act or omission or failure to act, was the cause, whereas the defendants, being those in charge of their yard and the rack of sheet metal, may be reasonably expected to know, and thus to be able to explain their lack of negligence. (See *Sanone v. J. C. Penny [sic] Company*, 17 Utah 2d 46, 404 P.2d 248).

If you find all of the above conditions to exist, they may give rise to an inference by you that the defendants were negligent, which inference will support a verdict for the plaintiff, in the absence of evidence of non-negligence on the part of the defendants.

### Instruction No. 4a

If you find from a preponderance of the evidence that the sheet metal which collapsed on Kerby Anderton when the stand pipe holding the same broke, was in the possession and exclusive control of the defendants, as I have explained the same to you; and, if you further find that the incident causing such an injury is of such a nature as . . . would [not] have happened in the ordinary course of events if the rack of sheet metal had been properly constructed and or maintained; and, if you shall further find that the

plaintiff is not in a position to know what was the specific reason for the breaking of the stand pipe and the collapse of the sheet metal, whereas the defendants as the possessors of said yard, and have the exclusive right to the control of the same, may be reasonably expected to know the reason for the same, and to thus explain their lack of negligence; then upon your making such findings, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendants. The inference is a form of evidence, and if there is none other tending to overcome it, or if the inference, to your minds, preponderates over contrary evidence, it would warrant a verdict for the plaintiff. Therefore, you should consider this inference together with all of the other evidence in the case in determining your verdict.

Defendants, over plaintiff's objection, secured the submission of an instruction relating to causation, which read as follows:

### Instruction No. 17

You are instructed that where the precise cause of an accident on the whole evidence is left to conjecture or speculation, and may be as reasonably attributed to causes over one or more of which the defendants has no control, as to a cause for which the defendants would be responsible, then, and in that event, there has been a failure in the required burden of proof. If you find from the evidence in this case that it is just as likely that the accident resulted from causes beyond the control of defendants as from negligence or fault, then the burden of proof as against such defendants have not been met, and such defendants are entitled to your verdict in their favor, no cause of action.

Defendants likewise requested and secured (again over plaintiff's objection) the reading of an instruction relating to the doctrine of "unavoidable or inevitable accident." The instruction stated that,

Instruction No. 19

In law we recognize what we term as unavoidable or inevitable accidents. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still no one may be held liable for injuries resulting from it. Both negligence and proximate cause, as defined in these instructions, are requisites for [finding] liability. If you find from the evidence in this case that the accident occurred without negligence on the part of defendants or was not proximately caused by any negligence on the part of defendants, you should answer interrogatory No. 3 "No".

It is plaintiff's contention that instructions 17 and 19 conflict with and contradict instructions 4 and 4a, dealing with res ipsa loquitur, in that they suggest the incumbency, upon plaintiff, of producing evidence of specific acts of negligence on the part of defendants, where res ipsa loquitur specifically obviates the necessity of doing so, permitting plaintiff to establish negligence on defendants' part by inference drawn from circumstantial evidence.

Turning first to plaintiff's contention that instruction 17 was inconsistent with the application of res ipsa loquitur, we note that he correctly characterizes the underlying function and purpose of that doctrine. As previously stated by this Court, the purpose of res ipsa loquitur is "to permit one who suffers injury from something under the control of another, which ordinarily would not cause injury except for the other's negligence, to present his grievance to a court or jury on the basis that an inference of negligence may reasonably be drawn from such facts; and cast the burden upon the other to make proof of what happened."[1] It is often the case that a plaintiff, while suffering injury which was caused by a force or agency allegedly instigated by defendant's conduct, is unable to produce evidence pinpointing a given act or omission on the part of defendant which breached a legally imposed standard of care. Where this is the case, the law permits plaintiff to withdraw from the specific conduct constituting negligence, and concentrate upon presenting evidence probative of circumstances which would permit the trier of fact to infer that defendant had engaged in negligent conduct to the injury of the plaintiff. Such circumstances, which have been defined by law, are (1) that the accident was of a kind which, in the ordinary course of events, would not have happened had due care been observed; (2) that the plaintiff's own use or operation of the agency or instrumentality was not primarily responsible for the injury;[2] and (3) that the agency or instrumentality causing the injury was under the exclusive management or control of the defendant.[3] It is to be noted that the weighing of evidence presented to establish the above elements, like all other questions of fact, is within the province of the jury; where the trial court determines that the evidence, viewed in a light most favorable to the plaintiff, could establish the prerequisites to the application

1. *Lund v. Phillips Petroleum Co.*, 10 Utah 2d 276, 351 P.2d 952 (1960); see also *Joseph v. W. H. Groves Latter Day Saint Hospital*, 10 Utah 2d 94, 348 P.2d 935 (1960); *White v. Pinney*, 99 Utah 484, 108 P.2d 249 (1940).

2. This is not to say that any contributory negligence on plaintiff's part prevents the application of the doctrine, such that it may not be used in those cases where plaintiff is seeking partial recovery under Utah's comparative negligence statute (U.C.A., 1953, 78–27–37). The requirement here is that plaintiff's use of the agency or instrumentality not be primarily responsible for the injury, not that his actions be free from negligence of any kind. (Note that the comparative negligence provision bars partial recovery under any type of proof where plaintiff's negligence equals or exceeds that of the defendant.) See 58 Am.Jur.2d Negligence, § 481, p. 58.

3. *Wightman v. Mountain Fuel Supply Co.*, 5 Utah 2d 373, 302 P.2d 471 (1956); *Moore v. James*, 5 Utah 2d 91, 297 P.2d 221 (1956); *Loos v. Mountain Fuel Supply Co.*, 99 Utah 496, 108 P.2d 254 (1940).

of the doctrine, an instruction to that effect is proper. It then becomes the jury's responsibility to apply, or refuse to apply, the doctrine based on its factual findings regarding the circumstantial prerequisites.[4]

With regard to instruction 17 in the present case, however, we must observe that res ipsa loquitur is an evidentiary doctrine aiding in the proof of negligence; it has no bearing on the issue of causation, which must be separately and independently established.[5] As in any negligence action, a legally-recognizable causal link must be established between defendant's act or omission and plaintiff's injury. Absent such a causal relationship, defendant's conduct, negligent or otherwise, gives rise to no liability.[6] Res ipsa loquitur does not relieve plaintiff of this obligation; rather, it permits him, in lieu of linking his injury to a specific act on defendant's part, to causally connect it with an agency or instrumentality, under the exclusive control of the defendant, functioning in a manner which, under the circumstances, would produce no injury absent negligence. However, where the agency or instrumentality is not established to be the cause of plaintiff's injury, or where it is not shown to be under the exclusive control of the defendant, the causal connection is not established, and the inference of negligent conduct giving rise thereto is nullified. Instruction 17, by informing the jury that "where the precise cause of an accident on the whole evidence is left to conjecture or speculation, and may be attributed to causes over one or more of which the defendants has no control, as to a cause for which the defendant would be responsible," liability should not be found, was simply specifying that, under such circumstances, the prerequisites of the doctrine of res ipsa loquitur would thereby be lacking. As such, instruction 17 does not contradict the res ipsa loquitur instructions given, but constitutes merely a clarification thereof.

For similar reasons, we are unpersuaded that jury instruction 19, dealing with unavoidable accident, contradicts the theory of res ipsa loquitur. Unavoidable accident, rather than being a separate legal doctrine, is simply a recognition of the fact that an incident causing injury to the plaintiff does not necessarily give rise to liability in the defendant. Where the injury arises from a set of circumstances which do not reflect a lack of due care on anyone's part, no recovery may be had under a theory of negligence, the accident having been "unavoidable."[7] Instruction 19, therefore, merely cautioned the jury that, absent persuasive proof presented by the plaintiff (by use of the doctrine of res ipsa loquitur or otherwise) that defendant had engaged in negligent conduct which resulted in an injury to the plaintiff, no liability was to be found, the injury arising from an unavoidable accident.

Plaintiff next focuses on the allegedly improper use of the "unavoidable accident" instruction under any circumstances. It is plaintiff's contention that the unavoidable accident instruction, by expressly restating what is no more than a legal truism implied in instructions relating to negligence and causation, is at best superfluous, and at worst confusing and misleading to the jury.

As explained above, a properly-drafted unavoidable accident instruction punctuates the necessity of finding both negligence and causation prior to assigning liability. It is true that such an instruction amounts, in essence, to a reemphasis of principles already implicit in other instructions. Such fact, in and of itself, is not prejudicial, however, unless it results in the instructions given being weighted, as a

---

4. *Lund v. Phillips Petroleum Co.*, supra, footnote 1.

5. See Frumer and Friedman, Products Liability, § 12.03[1], p. 284.

6. *Hall v. Blackham*, 18 Utah 2d 164, 417 P.2d 664 (1966).

7. *Calahan v. Wood*, 24 Utah 2d 8, 465 P.2d 169 (1970); *Woodhouse v. Johnson*, 20 Utah 2d 210, 436 P.2d 442 (1968); *Porter v. Price*, 11 Utah 2d 80, 355 P.2d 66 (1960).

whole, in favor of the defendant.[8] As such, an unavoidable accident instruction is not error if it clearly and concisely states the principle involved, and does not create an imbalance in the jury instructions.[9]

Instruction 19 adequately explains the concept of unavoidable accident. The final sentence thereof, stating, "If you find from the evidence in this case that the accident occurred without negligence on the part of defendants or was not proximately caused by any negligence on the part of the defendants, you should answer interrogatory No. 3 'No,'" sufficiently links the instruction to those other theories presented to the jury to enable them to perceive its significance in context.[10] It is to be noted, moreover, that the giving of instruction 19 in no way created an unfair imbalance of the instructions given to the jury. In light of the instructions already given regarding the use of circumstantial evidence under the doctrine of res ipsa loquitur, we deem it not only permissible but indeed proper that the need to find negligence, by one means or another, be reemphasized prior to the beginning of deliberations.

Plaintiff's final point on appeal deals with the relationship existing between juror Huber and defense counsel Nebeker. Plaintiff's theory runs as follows: Mr. Huber's failure to disclose his relationship with Mr. Nebeker, even though based on total ignorance of that relationship, denied plaintiff's counsel full opportunity to question regarding the matter during voir dire. As such, plaintiff's right to voir dire was improperly curtailed, resulting in an inadequate oppor-

tunity to challenge Mr. Huber, either for cause or peremptorily. As such, plaintiff was denied the right of full information and selective processes in jury selection, and was therefore denied trial by an impartial jury. We cannot agree with plaintiff's analysis.

Trial by jury in civil cases is guaranteed under the Utah Constitution.[11] Moreover, the requirements of due process dictate that the jury be impartial and unbiased.[12] It is in furtherance of these rights that voir dire examination of prospective jurors before the beginning of trial is engaged in. For the same reason, a trial court may order a new trial should it appear that juror bias crept into the proceedings notwithstanding voir dire questioning.[13] This is not to say, however, that it is incumbent upon a trial court to order a new trial whenever information is revealed which was not discovered by voir dire questioning addressed thereto. It is impartial jury trial, not complete voir dire questioning, that is the ultimate right involved. Where, in the sound discretion of the trial court, an infraction of the latter has no material impact upon the former, no prejudicial error has occurred.[14]

Given, in the present case, that an attorney-client relationship existed between Mr. Nebeker and the corporation of which Mr. Huber had at one time been an officer, and that such relationship was not disclosed upon voir dire examination, we are nonetheless constrained to agree with the trial court that no prejudicial error resulted

8. *Devine v. Cook*, 3 Utah 2d 134, 279 P.2d 1073 (1955).

9. *Calahan v. Wood*, supra, footnote 7.

10. Plaintiff, attempting to show that the unavoidable accident instruction was confusing to the jury, points to a note delivered to the court inquiring after the possibility of assessing 60 percent of the injury to unavoidable accident and 40 percent to negligence. Such evidence would be more persuasive had not the trial court, in concert with counsel of both parties and by their express approval, submitted a clarifying instruction to the jury regarding the proper use of unavoidable accident. The jury's question having been answered to the satisfac-

tion of both parties, plaintiff may not now be heard to state that the question posed remains as evidence of the inadequacy of the instruction.

11. See Article I, Section 10, Constitution of the State of Utah.

12. See Article I, Section 7, Constitution of the State of Utah; Amendment 14, Constitution of the United States.

13. Rule 59(a)(2), Utah Rules of Civil Procedure.

14. Rule 61, Utah Rules of Civil Procedure.

therefrom. The evil to be avoided in any relationship between juror and counsel is that of improper bias or prejudice, which arises, not from the fact of the relationship itself, but only from an awareness thereof. Mr. Huber can hardly be suspected of inclining toward the representations of Mr. Nebeker due to a relationship existing between the two of them of which neither was aware until after the trial had finished. For this reason, impartiality of the jury was undiminished by the relationship, and no prejudicial error occurred.

The decision of the trial court is affirmed. Costs awarded to defendants.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.