**STATE FARM FIRE & CASUALTY COMPANY, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, and Central Alaska Utilities, Inc., Appellees.**

No. S–2883.

Supreme Court of Alaska.

March 16, 1990.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellant.

James M. Bendell and Terry Venneberg, James M. Bendell & Associates, Anchorage, for appellee Municipality of Anchorage.

Michael D. Corey, Camarot, Sandberg & Smith, Anchorage, for appellee Cent. Alaska Utilities, Inc.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

### OPINION

MOORE, Justice.

In February 1983, a water main broke, flooding a number of homes and allegedly causing subsidence of some of the homes. Owners of two of the damaged homes sued the Municipality of Anchorage ("MOA"). State Farm Fire & Casualty Insurance Co. ("State Farm") insured the plaintiffs' homes and was substituted as the real party in interest after paying on the plaintiffs' policies. The trial court, Judge Rene J. Gonzalez, refused to apply strict liability against MOA and refused to instruct the jury on *res ipsa loquitur.* The jury rendered a verdict for MOA. State Farm appeals. We affirm in part, reverse in part, and remand for a new trial.

### I.

Sometime prior to 1983, apparently in the late 1970s, a high pressure water main was laid underground in the Foothills East Subdivision in Anchorage. A fire hydrant was connected to the main by a vertical pipe called a barrel and a horizontal pipe. The type of soil used to fill around the barrel is not in evidence and there is no evidence suggesting that precautions were taken to prevent the hydrant from breaking due to frost jacking.[1] The original plans for the hydrant did not call for wrapping the barrel to prevent frost jacking, although the specifications normally used by Central Alaska Utilities ("CAU"), which originally owned and operated the water main, may have called for wrapping.

On February 3, 1983, the connection between the barrel and the horizontal pipe attached to the main, called the "shoe," broke. This break released large amounts of water which flooded the plaintiffs' property. CAU dispatched a crew which repaired the break. It does not appear that additional precautions against further breaks were employed at that time. The broken shoe, which would have been evidence of the cause of the break, was apparently discarded.

---

**1.** Frost jacking is a phenomenon where moist soil around the barrel freezes and adheres to the barrel, pushing the barrel up toward the surface as the soil below freezes and thus expands. Testimony at trial indicated that frost jacking can be avoided in most cases by the use of frost-free fill material. Other precautions include wrapping the hydrant pipe with material such as Visqueen or Teflon that may prevent freezing soil from adhering to the hydrant barrel.

The Thomas and Nicholson houses suffered damage from subsidence in the months following the break. State Farm insured these homes, and paid claims based on this damage.[2]

On October 24, 1985, the Thomases and Nicholsons sued MOA. The complaint stated negligence and strict liability claims. MOA answered, raising affirmative defenses which included the failure to join an indispensable party. On June 22, 1987, plaintiffs amended their complaint to join CAU as a defendant. In January 1988, the Thomases' and Nicholsons' claims were dismissed and State Farm was substituted as the real party in interest. In February 1988, CAU's motion for summary judgment on the basis of the statute of limitations was granted, and CAU was dismissed from the case.[3]

The case was tried before a jury. One expert testified that the break was most likely caused by frost jacking attributable to improper fill around the pipe.[4] He also testified that the break was the most likely cause of damage to the homes in question. After all the evidence was given, Judge Gonzalez refused to instruct the jury on strict liability on the ground that the distribution of water is not an abnormally dangerous activity. The court refused to instruct the jury on the doctrine of *res ipsa loquitur* on the ground that the evidence adduced at trial showed that water mains may break even in the absence of negligence.

The jury found that MOA was not negligent in connection with the 1983 hydrant break and the court entered judgment for MOA. State Farm appeals.

### II.

Judge Gonzalez refused to instruct the jury on strict liability, finding "nothing extraordinary or exceptional or abnormally dangerous" about water distribution systems. We review this question of law using this court's independent judgment. "Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

State Farm argues that we should apply the rule of *Fletcher v. Rylands*, 1 L.R.–Ex. 265 (Ex.Ch.1866), *aff'd*, 3 L.R.–H.L. 330 (1868), imposing strict liability for release of impounded water. While *Fletcher* concerned the leaking of impounded water into a subjacent mine, 1 L.R.–Ex. at 265–66, the Court of the Exchequer Chamber was clearly concerned about the precedential effects of its decision in cases involving breaks in dams. Simpson, *Legal Liability for Bursting Reservoirs: The Historical Content of Rylands v. Fletcher*, 13 J.Legal Stud. 209, 250 (1984). Two sensational reservoir disasters occurred in the fifteen years before the court's decision. *Id.* at 219–21, 225–26. One of these occurred while *Fletcher* was being litigated and caused a number of villages virtually to disappear, killing at least 238 people and rendering tens of thousands of people destitute. *Id.* at 226. Lord Cairns' opinion in the appeal before the House of Lords limited the application of the *Fletcher* rule to "non-natural" uses of land. *Rylands v. Fletcher*, 3 L.R.–H.L. 330, 338 (1868). Municipal water lines are neither as risky nor as unusual as earthen dams.

Strict liability is imposed upon uncommon activities that threaten great harm and cannot be made safe by the use of reasonable care. *Yukon Equip., Inc. v. Fireman's Fund Ins. Co.*, 585 P.2d 1206, 1208–09 (Alaska 1978). We have held that strict liability should be applied in all cases involving explosives since the risk of damage from the storage or use of explosives is properly a cost of engaging in these

---

2. We considered a related dispute concerning the Nicholsons' claim against State Farm in *State Farm Fire & Casualty Co. v. Nicholson*, 777 P.2d 1152 (Alaska 1989).

3. State Farm has not questioned the propriety of dismissing CAU from the case and we do not consider the issue.

4. This expert and one other testified that such factors as freezing at the shoe, corrosion, and surface impact were not likely causes of the break.

hazardous activities. 585 P.2d at 1211. This rule is supported by substantial precedent. *E.g., Exner v. Sherman Power Const. Co.*, 54 F.2d 510, 514 (2d Cir.1931); *Bedell v. Goulter*, 199 Or. 344, 261 P.2d 842, 844 (1953). In *Yukon Equipment*, we reviewed the factors for determining when an activity is abnormally dangerous that are given in Restatement (Second) of Torts § 520 (1977) and declined to apply them in cases involving explosives. Because the weighing of these factors is suggestive of a negligence standard, *Yukon Equipment*, 585 P.2d at 1211; W. Keeton, *Prosser and Keeton on Torts* § 78 at 555 (5th ed.1984), we prefer the test for ultrahazardous activities given in Restatement of Torts § 520 (1939). Specifically, we would find an activity ultrahazardous and apply strict liability if that activity "necessarily involves a risk of serious harm ... which cannot be eliminated by the exercise of the utmost care" and "is not a matter of common usage." *Id.* Because we believe that water delivery systems, in contrast to explosives, can be made quite safe by the use of reasonable care, and such systems are common indeed, we decline to hold that the operation of such systems constitutes an ultrahazardous activity.[5] We thus join the majority of American jurisdictions that do not apply strict liability to water line breaks. *E.g., Interstate Sash and Door Co. v. City of Cleveland*, 148 Ohio St. 325,

74 N.E.2d 239 (1947); *Midwest Oil Co. v. City of Aberdeen*, 69 S.D. 343, 10 N.W.2d 701 (1943).

State Farm suggests that we impose strict liability because a utility is best able to insure against losses from broken water lines and can distribute the costs of premiums among all users of the system through higher rates. We have applied strict liability in cases of products liability for similar reasons. *See Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 877–78 (Alaska 1979); *Clary v. Fifth Ave. Chrysler Center, Inc.*, 454 P.2d 244, 248 (Alaska 1969). The argument of State Farm, an insurer subrogated after paying claims on homeowners' policies, that homeowners will have difficulty obtaining insurance to cover damage from broken water lines lacks credibility. Moreover, many Alaskans receive their water from small, private water utilities that would be gravely threatened by the imposition of strict liability for water line breaks. We decline to impose strict liability on these grounds. The superior court's holding on the application of strict liability is affirmed.[6]

### III.

State Farm argues in the alternative that if strict liability is not applicable to this case, the jury should have been instructed on the doctrine of *res ipsa loquitur*.[7]

---

**5.** We do not agree with State Farm's contention that the presence of permafrost or the possibility of earthquakes renders water distribution systems ultrahazardous. While escaped water may form heat sinks which accelerate the degradation of permafrost and cause the subsidence of affected properties, this factor is more appropriately considered in determining the reasonableness of the safety precautions employed to avoid breaks.

**6.** The parties did not argue and we do not decide whether MOA could be strictly liable to State Farm under the common law doctrines of lateral or subjacent support, *see* 6A A.J. Casner, *American Law of Property* §§ 28.36–.54 (1954) (strict liability for withdrawing necessary adjoining and underlying support of land); *but c.f. Braham v. Fuller*, 728 P.2d 641, 642–44 (Alaska 1986) (rule of reasonable use applied when actions of adjacent landowner melt permafrost under adjacent land causing subsidence), or the takings clause of the Alaska Constitution. *See Muskatell v. City of Seattle*, 10 Wash.2d 221, 116

P.2d 363 (1941) (interpreting identical provision of Washington Constitution).

**7.** The instruction State Farm requested was as follows:

The mere fact that the water main broke does not by itself necessarily prove that defendant was negligent. However, you may find the defendant was negligent if you find it more likely than not that the water main break in this case was the kind of event that would not ordinarily be expected to happen unless defendant was negligent in some manner, even if you cannot determine the precise cause of the break or the precise nature of the negligence.

If you decide that the above is true, you are permitted, but not required, to conclude that it was more likely than not that the defendant was negligent.

The municipality does not contend that this instruction was deficient, only that the conditions for giving any *res ipsa loquitur* instruction were not met. We thus have no occasion to

The doctrine of *res ipsa loquitur* permits, but does not compel, an inference of negligence from the circumstances of an injury. "The doctrine, where applicable, is a bridge, dispensing with the requirement that a plaintiff specifically prove breach of duty, once that duty and proximate cause have been established." *Widmyer v. Southeast Skyways, Inc.*, 584 P.2d 1, 10 (Alaska 1978) (footnotes omitted). The doctrine should be applied when:

(1) the accident is one which ordinarily does not occur in the absence of someone's negligence;

(2) the agency or instrumentality is within the exclusive control of the defendant;

(3) the injurious condition or occurrence was not due to any voluntary action or contribution on the part of the plaintiff.

584 P.2d at 11 (footnote omitted).

By shifting the burden of production to the defendant without relieving the plaintiff of the burden of proof, the doctrine makes recovery possible where circumstances render proof of the defendant's specific act of negligence impracticable and the defendant is the party in the superior, if not the only, position to determine the cause of an accident. *Ferrell v. Baxter*, 484 P.2d 250, 258 (Alaska 1971). Uncontradicted proof of specific acts of negligence which completely explain the circumstances and cause of the accident renders the doctrine superfluous and inapplicable. *Widmyer*, 584 P.2d at 11–12; *Crawford v. Rogers*, 406 P.2d 189, 193 (Alaska 1965).

Many courts in other jurisdictions have held that *res ipsa loquitur* is applicable in general to broken water main cases. *E.g., Juchert v. California Water Serv. Co.*, 16 Cal.2d 500, 106 P.2d 886 (1940); *Skaggs Drug Centers, Inc. v. City of Idaho Falls*, 90 Idaho 1, 407 P.2d 695 (1965); *Pacific Northwest Bell Tel. Co. v. Port of Seattle*, 80 Wash.2d 59, 491 P.2d 1037 (1971). This is a question of law. However,

the weighing of evidence presented to establish the [doctrine's] elements, like all other questions of fact, is within the province of the jury; where the trial court determines that the evidence, viewed in a light most favorable to the plaintiff, could establish the prerequisites to the application of the doctrine, an instruction to that effect is proper. It then becomes the jury's responsibility to apply, or refuse to apply, the doctrine based on its factual findings regarding the circumstantial prerequisites.

*Anderton v. Montgomery*, 607 P.2d 828, 833–34 (Utah 1980) (footnote omitted); *see Widmyer*, 584 P.2d at 13 ("While it is clear that *res ipsa loquitur* is applicable in general to aviation cases, it is not necessarily applicable to every such case since the specific circumstances will vary."). The plaintiff in a particular case is entitled to a *res ipsa loquitur* instruction if the trial court determines that the evidence introduced at trial, viewed in a light most favorable to the plaintiff, could lead the jury reasonably to conclude that the doctrine's elements were established. *Anderton*, 607 P.2d at 833–34.

In this case, State Farm introduced evidence that the break in question was probably caused by frost jacking and that frost jacking usually can be avoided by the use of safety precautions. State Farm's evidence was sufficient for a jury to find that the first element of *res ipsa loquitur*, that "the accident is one which ordinarily does not occur in the absence of someone's negligence," *Widmyer*, 584 P.2d at 11, was established.

The other two elements of the doctrine, defendant's exclusive control and plaintiff's lack of contributory negligence will usually be present in cases arising from breaks in underground water mains. Homeowners seldom have contact with water lines buried far underground. A defendant, of course, may attempt to prove otherwise. *See Widmyer*, 584 P.2d at 13 (finding defendant's exclusive control of airplane "[i]n the face of a silent record"). The existence

pass on the appropriateness of the requested instruction. We note, however, that the *res ipsa loquitur* instruction set forth in Alaska Pattern Civil Jury Instructions is somewhat different.

of these elements in this case was not contested at trial.

Because there appears to be little evidence of whether precautionary measures were taken in the installation of this particular fire hydrant, it is appropriate that MOA, the owner of the hydrant and successor to its installer, bear the burden of producing further evidence of whether the hydrant was installed negligently.

MOA argues in the alternative that the evidence provided a complete factual explanation of the cause of the break, precluding application of the doctrine. We rejected a similar contention in *Widmyer*. In that case, both parties relied heavily upon inferences of expert witnesses that were corroborated in part by the testimony of eyewitnesses. There was considerable uncertainty about what actually happened. We thus held that a complete factual explanation was not offered. *Widmyer*, 584 P.2d at 11–12. Here, there is no evidence of the soil originally used to fill around the barrel, and the shoe itself was not in evidence. The inferences of experts are the *only* evidence of the cause of the break. This does not amount to such a complete factual explanation that the application of *res ipsa loquitur* is precluded.

We therefore hold that the court erred by refusing to instruct the jury on *res ipsa loquitur*, and we remand for a new trial in accordance with this opinion.

We do not hold that an instruction on *res ipsa loquitur* is appropriate whenever a claimant introduces evidence of damage caused by the break of a water main. We simply believe that when there is sufficient evidence of the circumstances of an accident that a jury reasonably could conclude that the elements of *res ipsa loquitur* were established, the plaintiff is entitled to have the jury instructed on *res ipsa loquitur*. That was the case here. There may be times, for example, following an earthquake, when an inference of negligence would be unreasonable. Furthermore, the proof at trial may provide such a complete factual explanation of the cause of the accident as to dispense with the need for the doctrine.

The judgment of the superior court is therefore AFFIRMED in part, REVERSED in part, and REMANDED for a new trial.

COMPTON, J., dissents.

COMPTON, Justice, dissenting in part.

I agree with part II of the court's opinion, holding that the trial court did not err by refusing to instruct the jury on strict liability. However, I also believe that the trial court did not err in refusing to instruct the jury on *res ipsa loquitur*. The court holds, in essence, that the breakage of water mains due to frostjacking "does not ordinarily occur [in Alaska] in the absence of someone's negligence." *Widmeyer v. Southeast Skyways, Inc.*, 584 P.2d 1, 11 (Alaska 1978). As the court acknowledges, the applicability of *res ipsa loquitur*, and thus the propriety of an instruction, is a question of law. Op. at 11. However, many jurisdictions refuse to apply *res ipsa loquitur* to water main breaks. *E.g., Jennings Buick, Inc. v. City of Cincinnati*, 63 Ohio St.2d 167, 406 N.E.2d 1385, 1390 (1980); *City of Houston v. Church*, 554 S.W.2d 242, 243–44 (Tex.App.1977); *Roberts Realty Corp. v. City of Great Falls*, 160 Mont. 144, 500 P.2d 956, 963 (1972).

As the court in *City of Houston* correctly observed, where there is evidence that in the locality a particular type of accident frequently occurs as the result of unpredictable natural forces, *res ipsa loquitur* should not apply; it cannot then be said that the accident "does not ordinarily occur in the absence of someone's negligence." *City of Houston*, 554 S.W.2d at 244. *Cf. Widmeyer*, 584 P.2d at 13–14 (unusual climactic conditions militate against finding this prong of *res ipsa loquitur* satisfied).

In Alaska we are faced with unusual and unpredictable climactic conditions. It is fair to observe that our climate is less kind than most to water mains, and that they frequently burst. State Farm's own expert witness (Michael Shoemaker) acknowledged that water lines break here for several reasons unrelated to the installer's negligence. Indeed, while he at one point testified that certain engineering precautions

might help prevent frostjacking, he acknowledged that water mains in Alaska not only can break despite such precautions, due to permafrost degradation or freezing, but that many have.

Accordingly, I would affirm the trial court in all respects.